Perry W. ORFIELD, Plaintiff-Appellant,

v.

INTERNATIONAL HARVESTER COM-
PANY and Power Equipment Compa-
ny, Defendants-Appellees.

No. 75–1757.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 4, 1976.

Decided May 7, 1976.

Martin Heller, William R. H. Broome, Philadelphia, Pa., Bernard E. Bernstein, Knoxville, Tenn., for plaintiff-appellant.

George D. Montgomery, Robert R. Campbell, Knoxville, Tenn., N. R. Coleman, Jr., Greeneville, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and WEICK and MILLER,* Circuit Judges.

PER CURIAM.

This is an appeal from a directed verdict for the defendants granted at the close of the plaintiff's proof in a products liability action. Jurisdiction of the district court was properly invoked under 28 U.S.C. § 1332 because of diversity of citizenship and the requisite jurisdictional amount.

Plaintiff Perry W. Orfield had worked for many years as an operator of heavy equipment and had operated bulldozers both with and without steel canopy guards. On September 8, 1972, while in the employ of Wilson and Clark, Inc., he was directed by his foreman to use a particular bulldozer to windrow, or arrange in long piles, uprooted brush and trees on a construction site near Johnson City, Tennessee. The bulldozer was not equipped with an overhead protective canopy.

* Circuit Judge Miller concurred in this opinion prior to his death on April 12, 1976.

While plaintiff was engaged in the windrowing operation, he was struck in the chest by a fifty foot long black oak tree. Plaintiff did not see the tree until just before it struck him and he testified that something "triggered" the tree off so that it approached him from the right at a ninety degree angle.

Plaintiff-Orfield was aware that the bulldozer had no canopy guard and he was aware that windrowing trees and brush with a bulldozer not so equipped was a dangerous operation. According to his testimony, the danger could come from debris rolling over the top of the front blade or springing back from the sides of the blade or from "small stuff" hanging in the track and hitting the operator from behind as the tracks rotated in a forward direction. Orfield testified that he appreciated the safety provided by canopy guards and that he and other employees had mentioned this fact to the foreman. He explained that he engaged in the windrowing operation despite his awareness of the danger because he was afraid he would lose his job if he refused.

The bulldozer on which plaintiff was injured was manufactured by defendant International Harvester and sold to defendant Power Equipment Company. The latter company sold it to plaintiff's employer in 1969. Canopy guards were then in general use and commonly known as an effective means of protecting the bulldozer operator. Plaintiff's expert testified that in his opinion the bulldozer was defective and unreasonably dangerous when it left the hands of International Harvester without a canopy guard. He also testified that a guard would not adversely affect the operation of the bulldozer, would add only two to three per cent to the cost of the machine, and would have completely prevented plaintiff's injury. International Harvester now ships all bulldozers with canopy guards as standard equipment and has done so since 1971, a year before plaintiff's injury and two years after the machine in question was built.

The district court, relying on Section 402A of Restatement of Torts, Second, (1965)[1] and comments g[2] and i[3] to that

1. Section 402A provides:
§ 402. A. Special Liability of Seller of Product for Physical Harm to User or Consumer
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

2. Comment g provides:
g. *Defective condition.* The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes

make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained.
Safe condition at the time of delivery by the seller will, however, include proper packaging, necessary sterilization, and other precautions required to permit the product to remain safe for a normal length of time when handled in a normal manner.

3. Comment i provides:
i. *Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by "unreasonably dangerous" in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary

section, held that the bulldozer was not defective or unreasonably dangerous to the plaintiff. This conclusion was based on findings that plaintiff "contemplated" the condition of the bulldozer and that the bulldozer was not "dangerous to an extent beyond that which would be contemplated by an operator of long experience . . . , with the ordinary knowledge common to the community of bulldozer operators as to the characteristics of bulldozers in windrowing operations." Because plaintiff testified without contradiction that he was aware of the condition of the bulldozer and also that he was aware of the danger involved in conducting the windrowing operation with a bulldozer without a canopy guard, the court found that Orfield had failed to prove that the product was defective and unreasonably dangerous, both essential elements of his claim. The critical findings and conclusions of the district court in directing a verdict for the defendants are set forth in the appendix attached hereto.

Plaintiff argues that in directing a verdict for defendants, the district court did not correctly apply Tennessee law. Although we have found no Tennessee case which could be characterized as definitive on the exact issue before us, we do find from the decisions of the Supreme Court that it has approved the basic rule of Sec. 402A of the Torts Restatement and in addition has given convincing indications that it would also approve comments g and i to that section.

In *Ford Motor Company v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (1966), the Supreme Court of Tennessee first indicated its approval of the strict liability principle embraced in Sec. 402A of the Restatement of Torts, Second, (1965). After quoting that

section, the Supreme Court stated, 217 Tenn. 420–22, 398 S.W.2d 249–50:

It should be noted that the above section requires the plaintiff to establish that the product, when it left the hands of the manufacturer or other supplier, was at that time in both a defective and unreasonably dangerous condition. This section already has been approved by many courts. See for example, *Greenman v. Yuba Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963); *Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963); *Santor v. A. & M. Karagheusian*, 44 N.J. 52, 207 A.2d 305 (N.J.1965). It recently was followed by the Supreme Court of Illinois in *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965). It was there stated with reference to the general question of whether a manufacturer should be held liable for dangerous defects in his product without privity and without actual proof of negligence:

"The recent and often cited cases of *Henningsen v. Bloomfield Motors, Inc.*, (1960) 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1; *Greenman v. Yuba Power Products Inc.*, (1963) 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 and *Goldberg v. Kollsman Instrument Corporation*, (1963) 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 typify the increasing number of decisions which are extending the concept of strict liability to the manufacturers of products whose defective condition makes them unreasonably dangerous to the user or consumer. At the time Professor Noel wrote his article, Strict Liability of Manufacturers, for the May 1964 issue of the American Bar Journal (50 A.B.J. 446) he listed cases from twenty different jurisdictions (50 A.B.J. 446, 449 n. 15) as sup-

knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but

tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

porting the rule. While some of these decisions are not rendered by the highest court of the State, or are rendered by a Federal court noting the lack of authority in that State, on close examination are not clear cut on the matter, they nevertheless support his statement that 'The decisions since 1960, * * *, particularly the ones in the Henningsen, Greenman and Goldberg cases, may well turn the tide [to strict liability] in the near future as to many kinds of products.' (50 A.B.J. 446, 449.) More recent cases are collected in 1 Hursch, American Law of Products Liability, sec. 6.62 (Supp.1965) and 1 Frumer & Friedman, Products Liability, secs. 16, 16A (Supp.1964)"

It might be added that the torts writers who have most recently dealt with this subject have advocated adoption of the above quoted section 402A, and have found that now about half the states in the country have accepted the general principles adopted by the American Law Institute in that section, after full discussion of the matter extending over a period of several years. See for example Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. 513 (1965); Noel, Products Liability of Retailers and Manufacturers in Tennessee, 32 Tenn.L.Rev. 207, 237–261 (1965). There seems to be no unfairness in holding that a manufacturer who markets a product which is not only defective but unreasonably dangerous should be responsible for any physical harm which results to person or property, even though no privity of contract and no negligence can be established. It might be added that where the plaintiff can sustain the heavy burden of showing, as he must, that the product was in a dangerously defective condition at the time it left the hands of the manufacturer, it is quite likely that some negligence was involved even though this cannot be proved. See Wade, supra, 19 Sw.L.J. 5, (1965); Noel, Products Liability of Manufacturers—To Manufacturers of Products—The Drift Toward Strict Liability, 24 Tenn.L.Rev. 963, 1012–13 (1957).

We regard it as significant that the first sentence in the above quotation was not derived by the court from the bare language of Sec. 402A. The sentence is actually a synthesis of portions of the language of comments g and i to Sec. 402A, and thus may be taken as tacit approval by the court of these comments, in addition to the basic rule itself.

*Ford Motor Company v. Lonon, supra,* was soon followed by the opinion of the Supreme Court in *Olney v. Beaman Bottling Company,* 220 Tenn. 459, 462, 418 S.W.2d 430, 431 (1967), in which Sec. 402A was directly approved as the law of Tennessee:

We recognize that strict liability exists upon the manufacturer of a product without fault on his part, under the circumstances outlined in 2 RESTATEMENT, Second, Torts § 402–A (1965). This result was foreshadowed by the opinion of this Court in the case of *Ford Motor Company v. Lonon,* 217 Tenn. 400, 398 S.W.2d 240 (1966). This is a development in the law of torts which seems justified where the conditions specified in the RESTATEMENT are established by proof.

In *Ellithorpe v. Ford Motor Company,* 503 S.W.2d 516 (Tenn.1973), the plaintiff sought recovery for injuries sustained when her vehicle collided with the rear of another vehicle as the latter came to a sudden stop, and her face struck the protruding prongs of a Ford emblem placed by the manufacturer in the center of the steering wheel hub. The trial court sustained the defendant's motion to dismiss the complaint on the ground that it had failed to state a claim upon which relief could be granted, since on the facts alleged in the complaint the plaintiff was guilty of negligence as a matter of law. On appeal, the Supreme Court of Tennessee held that the case was governed by the law of strict liability in tort which had been approved by the Supreme Court in *Lonon, supra; Olney, supra;* and also by the Court of Appeals of Tennessee in the case of *Carney v. Ford Motor Co.,* CCH Products Liability Reports, ¶ 6306 (Tenn. App.1970).

It was specifically recognized by the Court that in an action governed by Sec. 402A a defendant could rely upon the defense of "assumption of risk." This defense was defined by the court in the same terms as set forth in comment n to Sec. 402A:[4]

> The courts do recognize, however, that plaintiffs can conduct themselves in such a way as to defeat recovery. Regardless of which label is used, "contributory negligence" or "assumption of risk", the courts have generally held that ordinary lack of care is not a defense, while "voluntarily and unreasonably proceeding to encounter a known danger" is a defense. *Williams v. Brown Manufacturing Co.,* supra [45 Ill.2d 418] 261 N.E.2d [305], at 309; Prosser, The Law of Torts, Sec. 102 at 670; Restatement (Second) of Torts, Sec. 402A, comment n at 356. As the court said in *Carney v. Ford Motor Co.*:
>
> "We . . . conclude that when a plaintiff, with knowledge of the defect, uses the product in such a manner as to voluntarily and unreasonably encounter a known danger, that act may be plead as a defense to an action based on strict liability in tort. We do not deem it determinative of the availability of this defense whether it be called negligence, contributory negligence or assumption of risk. It is more a matter of the unreasonableness of permitting a plaintiff to deliberately put in motion a known danger and attempt to profit thereby." Id. at 9727.
>
> Likewise, the Restatement (Second) of Torts, Sec. 496A, comment d at 563, states that the *only* form of contributory negligence which can be used as a defense in strict products liability cases is that known as "assumption of risk"

as defined in *Carney v. Ford Motor Co.,* supra. We agree. 503 S.W.2d at 521.

So reasoning, the Supreme Court remanded the action to the Circuit Court for "trial on the merits. The jury must decide, based on all the evidence, whether the design meets the test of Sec. 402A, i. e., whether the car was 'in a defective condition unreasonably dangerous to the user,'" citing among other cases, *Olney v. Beaman Bottling Co., supra.*

From this brief survey of pertinent decisions of the Supreme Court of Tennessee, there is reason to believe that that court would approve comments g and i to Sec. 402A as being a part of the law of that state.

As we have pointed out, its approval of the basic rule stated in Sec. 402A has been clearly enunciated. Further, in *Ellithorpe, supra,* it approved the definition of the assumption of risk defense as stated in comment n to Sec. 402A. In *Ford Motor Company, supra,* it approved, inferentially at least, comments g and i. Having proceeded thus far in incorporating the rule of strict liability as formulated in Sec. 402A as a part of the controlling law in Tennessee, we are convinced that the Tennessee Supreme Court, if confronted with the direct question, would also specifically approve comments g and i to Sec. 402A, at least on facts comparable to the facts of this case. On that premise, we agree with the district court that the plaintiff is precluded from recovery as a matter of law.

The rule formulated in Sec. 402A is limited by comment g to apply only "where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unrea-

---

4. Comment n provides:

> *n. Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

sonably dangerous to him." In order for the rule to apply comment i provides that the article sold "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

■ As we have indicated and as the district court found, the plaintiff's own testimony demonstrates that while the bulldozer was dangerous to operate without a canopy guard, it was not dangerous to an extent beyond his knowledge as an ordinary consumer. From the undisputed evidence,[5] the plaintiff had full knowledge of the machine's characteristics as manufactured and delivered; he was fully aware of the dangers which would be incurred in conducting the windrowing operations without the canopy guard; and he was also aware that while the machine as manufactured and delivered may have been dangerous, it was not dangerous beyond his own contemplation as a user possessing ordinary knowledge of its characteristics.

This case is to be distinguished on its facts from *Ellithorpe* in which the operator of the automobile was assumed to be aware of the protruding emblem from the hub of the steering wheel, but was not shown to have possessed any knowledge of nor to have contemplated the danger involved, because of the presence of the emblem, in striking another vehicle which had come to a sudden stop in front of her. At best, in that case it would be a question for the jury whether the driver of the vehicle contemplated the danger incident to the existence of the emblem. Indeed, the Supreme Court of Tennessee recognized on the facts presented that the Sec. 402A question was for the jury to decide. This is indicated by the statement of the court in remanding the action for trial on the merits, as we have already noted, that it was for the jury to decide, based on all the evidence, whether the car was in a defective condition unreasonably dangerous to the user.

We are aware that there are cases holding or inferring that the mere obviousness of a defect may not alone be sufficient to constitute an unreasonable danger within the ambit of Sec. 402A. *Cf. Dorsey v. Yoder Mfg. Co.,* 331 F.Supp. 753 (E.D.Pa. 1971); *Davis v. Fox River Tractor Company,* 518 F.2d 481 (10th Cir. 1975).

■ The *Dorsey* and *Davis* cases, and most other cases of like import, are not controlling here since more is involved than an obvious defect. The extreme danger due to the absence of the canopy guard was actually known and contemplated by the user or consumer if the bulldozer should be put to the use of windrowing operations.[6]

---

5. The testimony of the safety engineer, Edward Landry, that in his opinion the bulldozer was defective and unreasonably dangerous did not require the district court to submit the issue to the jury. This is true because, as stated by the district court, the only logical inference from the undisputed testimony of the plaintiff himself, is that he contemplated the danger to himself which would be incurred by using the bulldozer in the windrowing operation without the protection of a canopy guard.

6. Since in this case the facts are undisputed that the plaintiff actually contemplated the danger, it is not necessary to speculate how the Supreme Court of Tennessee would apply Sec. 402A in the case of mere obviousness. Ordinarily, whether a defect is an obvious one would present a question for the fact finder. We would assume, although we do not decide, that the Tennessee court would probably hold that obviousness should be considered by the fact finder along with all other relevant facts in determining whether or not the plaintiff contemplated that a given defect would be unreasonably dangerous as to him. Thus, the defect in *Ellithorpe, supra,* was an obvious one, but the court by remanding the case for consideration by the jury apparently felt that the resolution of the strict liability issue under Sec. 402A depended upon the total factual situation. For example, if it should be shown in that case that the driver had just purchased the car and had no experience with or knowledge of similar accidents, the jury might well conclude that the defect, while obvious, was not one which was actually contemplated by the driver under the circumstances as being hazardous or dangerous. On the other hand, if it should be shown that the plaintiff or a member of her immediate family had experienced a similar accident with the same automobile in the recent past, from which personal injuries were sustained, the jury might well conclude that the plaintiff actually contemplated the danger and therefore would be precluded from recovery.

This knowledge was gained from first-hand experience with bulldozers in a similar condition and used in similar operations. Furthermore, in this diversity action our responsibility is to determine and apply the law of Tennessee. If the law of that state on the subject has not been clearly delineated, it is our duty to forecast as best we can from available sources what the Supreme Court of the state would do if presented with the same issue. *See Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199, 208 (1956) (Frankfurter, J., concurring); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832 (2d Cir. 1967).

For the reasons indicated herein, the judgment of the district court sustaining the defendants' motions for a directed verdict is hereby

AFFIRMED.

## APPENDIX

\*　　\*　　\*　　\*　　\*　　\*

It was stipulated by all the parties that the plaintiff Mr. Perry W. Orfield was operating a tractor (bulldozer) manufactured by the defendant International Harvester Company and sold to the defendant Power Equipment Company in June, 1969, and then sold by the latter company at about the same time to Mr. Orfield's employer, Wilson and Clark, Inc. It was stipulated also that on September 8, 1972, while Mr. Orfield was operating this bulldozer, a tree fell across the operator's seat thereof and struck him. Mr. Edward B. Landry, a safety engineer, testified *inter alia* that, in his opinion, this bulldozer was defective and unreasonably dangerous to Mr. Orfield as a user thereof, in that it was not equipped at the pertinent times with a safety device in the form of a canopy guard.

The plaintiff Mr. Orfield testified *inter alia* that he was fully aware before and at the time of the foregoing accident that the bulldozer he was operating was not equipped with a canopy guard; that he had operated the particular bulldozer, which he was operating when injured, many times previously; that he had utilized this and other bulldozers before in the same type of windrowing[1] operations, in which he was engaged at the time he was injured; that he had operated bulldozers many times previously, some of which were equipped with canopy guards and some of which were not so equipped; that bulldozers equipped with canopy guards are much safer for their operators than those not so equipped, because canopy guards protect bulldozer operators from risk of injury from falling or flying trees, limbs, brush, rocks, etc.; that windrowing operations were known to him before this accident to be " \* \* \* extremely dangerous \* \* \* ", because objects are prone to " \* \* \* spring up and fly back \* \* \* " and strike the operator of a bulldozer; that he knew he might be hurt in such manner by engaging in a windrowing operation without the protection of a guard canopy on the bulldozer he was operating; and that he was injured on this occasion when a black oak tree, some 50 feet long with a diameter of about 10 inches, was " \* \* \* triggered \* \* " from a 90° angle to his right in the windrowing process and struck him across his chest.

He also testified that he had been operating bulldozers, including those similar to the one he was operating when injured, for a period of 30 years; professed knowledge of every facet of the operations of a bulldozer and other heavy equipment; had discussed with his employer's foreman the fact that canopy guards should be added onto all his employer's bulldozers; and, although he had never been injured previously by the falling of a tree across the operator's seat of a bulldozer, he knew that a variety of accidents could result, and had resulted, from the use of a canopyless bulldozer in windrowing operations.

---

1. Windrowing was described as gathering trees and brush with the blade of a bulldozer and moving them into piles.

The aforementioned rule of strict liability without a specific showing of fault " * * applies only where a product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate * * * [user] * * *, which will be unreasonably dangerous to him. * * *" 2 Restatement of Torts, *supra,* at 351, sub-§ g. Of course, only Mr. Orfield himself knows what he contemplated, but from his direct testimony, the only logical inference is that he contemplated the condition of this bulldozer which would be dangerous to him when he used it. It thus appears, as a matter of law, that the bulldozer in question was not shown by the plaintiff's proof to be "defective" at the pertinent times, as that term is utilized in the foregoing rule.

Even if it be assumed *arguendo,* that such bulldozer was in a defective condition at the pertinent times because the condition of the bulldozer was not contemplated by Mr. Orfield, the evidence showed without dispute that it was not unreasonably dangerous to him, as that term is utilized in such rule. The strict liability rule is further limited as follows: " * * * The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary * * * [user] * * *, with the ordinary knowledge common to the community as to its characteristics. * * *" *Ibid.,* at 352, sub-§ i. The direct testimony of Mr. Orfield again renders inescapable the inference that the bulldozer involved was not dangerous *to an extent beyond that* which would be contemplated by an operator of long experience, with the ordinary knowledge common to the community of bulldozer operators as to the characteristics of bulldozers in windrowing operations.

It is the opinion of this Court, that under the aforementioned instructions as to the applicable law, and under the undisputed facts in this record at the conclusion of the plaintiff's proof on the issue of liability, six reasonable minds could come to only one conclusion, and that the jurors would be compelled thereunder to find for the defendants on the issue of liability herein.