James D. KELLAR and Ruby Kellar

v.

INDUCTOTHERM CORPORATION.

No. CIV. 3–78–196.

United States District Court,
E. D. Tennessee, N. D.

Dec. 26, 1978.

R. Hunter Cagle, Frank Flynn, Jr., Robert Pryor, Knoxville, Tenn., for plaintiffs.

William N. Groover, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is a products liability action pursuant to the Restatement (Second) of Torts § 402A (1965). Following a trial on the merits, the jury rendered judgment for the plaintiffs, a foundry worker and his wife. The defendant subsequently filed several motions, including a motion for judgment notwithstanding the verdict. Briefs have been filed by both sides.

The relevant facts are not in dispute. In 1971, defendant sold a channel furnace to Vestal Manufacturing Company, ("Vestal"), plaintiff's employer. Vestal then installed the furnace at its foundry. Defendant was aware of Vestal's plans for installation. Defendant also sold to Vestal a rear deck which was intended to be attached to the furnace, and which was attached by Vestal. In 1974, the furnace was moved 15 feet

from its original point of installation. The operation of the furnace was essentially unaffected by the change in location.

Plaintiff, James D. Kellar, was working as a furnace helper at Vestal at the time of the accident. Plaintiff was working at a nearby furnace when an eruption occurred. The jury could reasonably have concluded from the evidence that a piece of scrap metal struck plaintiff in the head, causing him to be dazed. The jury could also have found that, in this condition, plaintiff moved a short distance and fell into the open pit of the channel furnace manufactured by the defendant.

The channel furnace which was manufactured by the defendant can be utilized without exterior surrounding platforms. The proof showed, however, that in the vast majority of cases, channel furnaces are installed into pits, or open areas, with work platforms built up around the furnace in order to allow access to the furnace. When the furnace pours out metal in its normal operation, it tilts forward, thereby exposing the pit. In this case, Vestal built the work platforms surrounding the furnace, thereby creating the pit into which plaintiff fell.

The rear deck which Vestal ordered from defendant, and which Vestal attached to the furnace, covered all of the pit during the period of time in which the furnace was horizontal. When the furnace was in a tilted position, however, the rear deck did not cover all of the pit, but a small open space remained, into which plaintiff fell. Vestal provided chains to guard the open space but the evidence was clear that the chains were not normally used, and were not in use on the day of the accident.

Plaintiffs contended at trial that the furnace manufactured by the defendant was defective and unreasonably dangerous because a guard for the pit should have been placed over the open space. Plaintiffs further contended that the furnace was defective in that the defendant failed to warn Vestal and plaintiff of the danger of the unguarded pit.

Defendant makes several arguments in its motion for a judgment notwithstanding the verdict. The two most important arguments concern the proper allocation of responsibility for the unguarded pit, and the obviousness of the defect in the furnace, if any. Defendant argues that the furnace cannot be said to be defective and unreasonably dangerous because the condition of the pit was a defect, if at all, of the platform area manufactured by Vestal, rather than of the furnace. Defendant further argues that the furnace could not be considered to have been defective and unreasonably dangerous because of a danger which was obvious to everyone, including the plaintiff. In the opinion of the Court, both of defendant's arguments are sound and it cannot be held liable in this case.

■ Section 402A provides in pertinent part that

[o]ne who sells any product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm thereby caused . . . .

This rule has been adopted in Tennessee. See *Ford Motor Co. v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (1966). Under section 402A, a manufacturer is required to produce a product which is reasonably safe for those uses which are foreseeable. *See Raney v. Honeywell, Inc.*, 540 F.2d 932 (8th Cir. 1976); *cf. Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 519–520 (Tenn.1973). The manufacturer is not free to rely upon the expected later installation by a purchaser of a safety device necessary to render the product reasonably safe. *See Wheeler v. Standard Tool and Manufacturing Co.*, 359 F.Supp. 298 (S.D.N.Y.1973), aff'd, 497 F.2d 897 (1974); *Bexiga v. Havir Manufacturing*, 60 N.J. 402, 290 A.2d 281 (1972). These general rules of law are cited by plaintiffs to support the verdict of the jury, but they do not control this case.

■ The principle at issue in this case is that section 402A imposes liability upon a manufacturer only if *his product* is in some way defective and causes harm. Although it may be said that section 402A has expanded the reach of a manufacturer's liability, it is still true that there is "no basis for

imposing liability upon the manufacturer of a product for damage caused by someone else's product," in the absence of proof that damage was caused by a defect in the manufacturer's product. *Cf. Croteau v. Borden Co.*, 277 F.Supp. 945, 947 (E.D.Penn.1968), *aff'd*, 395 F.2d 771.

■ In this case, the furnace in question served as but one small component of a larger foundry system designed and built by Vestal. There is no allegation by plaintiffs that the furnace was in any way defective concerning its own function of heating and storing metals. .The dangerous condition of the open pit was created by Vestal, not by defendant. Plaintiffs' contention[1] is essentially that the furnace was defective because it failed to protect plaintiff from a danger created by Vestal, a third party. Plaintiffs have failed to show any authority for holding the manufacturer of a component part liable under such a theory. The manufacturer of a component part certainly may be held liable for a defect in its product, even after that part is assembled into a larger product. *See Penker Construction Co. v. Finley*, 485 S.W.2d 244 (Ky.App. 1972); *Southwire Co. v. Beloit Eastern Corp.*, 370 F.Supp. 842, 856 (E.D.Penn.1974); *Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376, 1379 (S.D.Ind.1976). But the defect must be present in the "self–contained component part" itself. *Cf. Southwire Co. v. Beloit Eastern Corp., supra*, at 858. Here the furnace could not be held defective in and of itself merely because it failed to protect plaintiff against Vestal's design and construction.

This is not a case in which a safe product arguably becomes dangerous because of the anticipated addition to it of other products. *Cf. E. I. du Pont v. McCain*, 414 F.2d 369 (5th Cir. 1969). In the case sub judice plaintiff was injured when he fell from a platform manufactured by a third party into a pit created by the third party. The furnace itself was not at all unsafe. Plaintiff was not injured by defendant's furnace. Plaintiff was not even using defendant's furnace at the time of the accident.

■ Plaintiffs argue that defendant should be held liable here because it could foresee the danger of the unguarded pit and could have eliminated the danger. Arguably, there were many manufacturers of products used by Vestal in the foundry which had sufficient expertise to foresee the danger Vestal created for its workers and perhaps with the capability to mitigate the danger. This fact is insufficient by itself to create liability against the manufacturers of these other products. If a manufacturer could be held liable for injury merely because it foresaw a danger created by another party, there would literally be no end of potential liability. To sustain such a theory would be to cast manufacturers into the role of insurers of products manufactured by others.

■ Plaintiffs argue that the rear deck manufactured by defendant was defective in not covering the pit at all times. Plaintiffs do not suggest that the rear deck failed in its intended purpose of covering the open area during periods when the furnace was not tilted. Rather, plaintiffs say that the deck should have been designed to protect workers from the danger of the pit at all times. This argument is a reformulation of plaintiff's general position, that the defendant had an obligation to protect the pit area. The responsibility for such protection belonged to Vestal, not to the defendant. The rear deck was understood to be only a partial solution to the problem of the pit. The rear deck performed as specified by Vestal. The creation of a limited safety device for a third party does not render a manufacturer liable because the safety device was not designed to prevent all possible dangers associated with the product of the third party.

---

1. Plaintiffs also argue that the furnace was defective for a failure to warn of the danger. Aside from any other weakness of this theory, all parties were generally aware of the danger, and no warning would have deterred plaintiff at the time of the accident. Accordingly, there could be no causal connection between any failure to warn and the harm. The Court therefore focuses its discussion upon the alleged failure of the manufacturer to attach a safety device.

If any party were to be liable for the danger of the unguarded pit, it ought to be Vestal, which created the danger. Presumably, the only reason that plaintiffs seek recovery against defendant is that plaintiff's exclusive remedy against his employer, Vestal, lies under Tennessee's Workmen's Compensation Law. Tenn.Code Ann. §§ 50–901 *et seq. See Garrison v. Graybeel,* 202 Tenn. 567, 308 S.W.2d 375, 379 (1957).

Defendant's second argument supporting its motion for judgment notwithstanding the verdict is that the furnace cannot be considered defective and unreasonably dangerous because the defect, if any, was obvious to all parties. In *Orfield v. International Harvester Co.,* 535 F.2d 959 (6th Cir. 1976), the Sixth Circuit recently examined the issue of obvious defects under Tennessee law. The Court concluded that a product is not defective and unreasonably dangerous within the contemplation of section 402A unless the product is dangerous beyond a plaintiff's contemplation as a user possessing ordinary knowledge of the products' characteristics. *Id.* at 964. In *Orfield,* the undisputed testimony of the plaintiff that he contemplated the condition of a bulldozer and was aware of the danger involved in using the bulldozer without a canopy guard, precluded a finding that the bulldozer was defective and unreasonably dangerous. In similar fashion, in this case the evidence showed that the plaintiff did understand the danger of working in close proximity to the unguarded pit. Plaintiffs argue that plaintiff did not contemplate the precise type of accident which occurred nor, because of his dazed condition, did plaintiff appreciate the danger at the time of the accident. There is no requirement in *Orfield* that before a manufacturer is insulated from liability, a plaintiff must contemplate the precise events which ultimately lead to the harm. It is sufficient that a plaintiff appreciate the kind of accident which can occur from the use of the product in its allegedly defective condition. Nor is it necessary that the danger be fully contemplated at every moment. The district court in *Orfield* made its critical findings of the plaintiff's awareness based upon plaintiff's general appreciation of the danger, without inquiring into plaintiff's knowledge at the precise moment of the accident. *Id.* at 965–966. Given the Court's conclusion that plaintiffs here cannot recover because plaintiff contemplated the danger, it is not necessary to decide whether Tennessee courts would prohibit recovery for any obvious defect.

The Court is aware of the strict standard which governs consideration of a motion for judgment notwithstanding the verdict.

> Judgment notwithstanding the verdict is not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. It should not be granted if there is a conflict in the evidence, and credibility of evidence is not to be considered in passing on a motion for judgment.

*Reeves v. Power Tools, Inc.,* 474 F.2d 375, 380 (6th Cir. 1973). In granting defendant's motion, the Court has considered either undisputed evidence or has construed the evidence in the light most favorable to plaintiffs. Plaintiffs simply cannot recover on this record as a matter of law. In this regard, the Court notes that, as stated on the record, it was only with extreme reluctance and out of an abundance of precaution that this case was submitted to the jury.

For the foregoing reasons, it is ORDERED that defendant's motion for a judgment notwithstanding the verdict be, and the same hereby is, granted. Given the Court's ruling, defendant's other motions are moot, and are hereby denied.

Order accordingly.