Kandis Renae MILLER,
Plaintiff-Appellant,

v.

UTICA MILL SPECIALTY MACHINERY COMPANY, INCORPORATED, Defendant-Appellee,

Mohawk Valley Knitting Machinery Company, et al., Defendants.

No. 82–5750.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 22, 1984.

Decided March 6, 1984.

J.D. Lee, J.D. Lee & Associates, William Ogle (argued), Knoxville, Tenn., for plaintiff-appellant.

Charles B. Lewis, R. Loy Waldrop, Jr. (argued), Knoxville, Tenn., for defendant-appellee.

Douglas L. Dutton, Knoxville, Tenn., for intervenors.

Before LIVELY, Chief Judge, JONES, Circuit Judge, and PECK, Senior Circuit Judge.

PER CURIAM.

This case is currently before the Court upon Kandis Renae Miller's appeal from the district court's judgment for the defendants entered pursuant to a jury verdict in this diversity action for strict products liability. On appeal, Miller contends that the district court erred in its instructions to the jury. Upon consideration of the charge as a whole, and of Miller's requested charge; we conclude that there was no error in the instruction as given.

Miller was injured at work on March 31, 1981, as she operated a strip cutter manufactured by Utica. The strip cutter is a machine used to make short rolls of cloth from long rolls. The machine consists of a number of high-speed, power-driven shafts, a knife for cutting, and a knife sharpener. At the time of the injury, Miller was standing on a wooden platform placed under the machine for her to stand on while operating it. She left the operating position with the machine running and walked down the narrow edge of the platform where her hair was caught and wrapped around the only exposed shaft on the machine. This shaft effectively severed all of Miller's hair from her head, necessitating extensive surgery for its replacement.

Miller filed suit against Utica, alleging that their machine was defective and unreasonably dangerous because of the absence of protective guarding for the shaft which caused her injury. Utica defended by arguing that (1) Miller had assumed the risk of using the machine in the manner in which she did and (2) that her employer's actions constituted an intervening proximate cause of Miller's injuries. Prior to submitting the case to the jury the district court instructed the jury in relevant part as follows:

A product is defective if it is unsafe for normal or anticipated use. To be defective, the product must be dangerous to an extent beyond that which would be contemplated by the ordinary user who uses it with the ordinary knowledge common to the community as to its characteristics....

"Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics or that the product, because of its dangerous condition, would not be put on the market by a reasonably prudent manufacturer or distributor assuming that he knew of its dangerous condition.

Few products can be made entirely safe for all use. *A manufacturer has no duty to make an obviously dangerous product safe.* The unavoidably unsafe product is not reasonably dangerous.

(emphasis added).

Miller contends that the district court's instruction that "a manufacturer has no duty to make an obviously dangerous product safe" is a classic formulation of the obvious danger doctrine which imposes liability on a manufacturer only for injuries caused by latent, as opposed to open and obvious, defects. She argues that this doctrine was implicitly rejected by the Tennessee Supreme Court in *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn.1973). Instead, she argues, the obviousness of the danger must be considered along with other factors in determining whether she assumed the risk of operating the machine in the manner in which she did. We agree with Miller's contention that the obviousness of the danger is one of several factors to be considered under Tennessee law. We disagree, however, with her contention that the court's instruction was erroneous.

The function of the reviewing court with respect to jury instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law. *Green v. Edmands Co.*, 639 F.2d 286 (5th Cir.1981). The jury is presumed to have followed the instructions correctly as given. *Tucker v. Bethlehem Steel Corp.*, 445 F.2d 390 (5th Cir.1971). In determining whether the instructions are erroneous, they must be considered as a whole, *Carruba v. Transit Cas. Co.*, 443 F.2d 260 (6th Cir.1971), however, a substantial and prejudicial error in even a single instruction may require reversal. *J.C. Carlile Corp. v. Farmers Liquid Fertilizer, Inc.*, 346 F.2d 91 (8th Cir.1965).

In reviewing the jury instructions in this case we are guided principally by the decisions in *Ellithorpe, supra,* and *Orfield v. International Harvester Co.*, 535 F.2d 959 (6th Cir.1976). In *Ellithorpe,* the plaintiff sought recovery for injuries sustained when her automobile collided with the rear end of another car which came to a sudden stop in front of her. The collision caused her face to strike the protruding prongs of a Ford emblem placed by the manufacturer in the center of the steering wheel. The trial court dismissed the complaint on the ground that it failed to state a claim upon which relief could be granted. The trial court reasoned that on the facts alleged in the complaint the plaintiff was guilty of negligence as a matter of law. The Tennessee Supreme Court reversed and remanded for trial, holding that the case was governed by the law of strict liability in tort. 516 S.W.2d at 519. The court also noted that Tennessee had adopted the strict liability rule set out in Restatement (Second) of Torts, § 402A. Thus plaintiff's *ordinary* negligence would not bar her recovery. *Id.* at 521. The court did find, however, that the plaintiff's conduct would bar her recovery where she "voluntarily and unreasonably" encountered a known danger. *Id.* In sending the case back for trial the court said:

Defendants contend, however, that the conduct of the plaintiff rose to the level of "assumption of risk" because the defect in her car was in plain view on the steering wheel which she sat behind every day. She therefore assumed the risk by "voluntarily and unreasonably proceeding to encounter a known danger." (citation omitted) To fulfill the assumption of risk test under Tennessee law, however, three requirements must be met. The plaintiff must (1) discover the defect, (2) fully understand the danger it presents to her, and (3) disregard this known danger and voluntarily expose herself to it. (citation omitted) Reasonable minds could differ as to whether these three requirements were met by plaintiff, and in such a case, the question is one for the jury to decide. (citation omitted)

*Id.* at 522.

*Orfield, supra,* was an appeal from a directed verdict for the defendant granted at the close of the plaintiff's case in a

diversity action under Tennessee law for products liability. The plaintiff had worked for several years operating heavy equipment, including bulldozers with and without steel canopy guards. He was injured while operating a bulldozer which was not equipped with an overhead protective canopy. At trial the evidence showed that the plaintiff was well aware that the bulldozer had no protective canopy, and of the dangers this presented. The plaintiff testified that despite his awareness of the danger he operated the bulldozer because he was afraid he would lose his job if he refused. The district court directed a verdict for the defendant, finding as a matter of law that the bulldozer was not "defective" or unreasonably dangerous because the plaintiff had contemplated the condition of the bulldozer and it was not dangerous to an extent "beyond that which would be contemplated by an operator of long experience...." On appeal this Court affirmed the directed verdict, finding that the plaintiff had full knowledge of the machine's characteristics as manufactured and delivered; he was fully aware of the danger which would be encountered without the canopy guard; and he was also aware that while the bulldozer may have been dangerous, it was not dangerous beyond his own contemplation as a user possessing ordinary knowledge of its characteristics. 535 F.2d at 964. The *Orfield* Court noted the existence of cases from other jurisdictions holding or inferring that the obviousness of the defect would not defeat liability, but felt that these were not controlling because the evidence showed more than an obvious defect. *Id.* at 964–65. The evidence showed that the danger was actually known and contemplated by the plaintiff, thus it could not be said that the risk was beyond his contemplation.

▮ We believe it clear from the foregoing discussion that the obviousness of the danger is a factor to be considered in determining whether a plaintiff voluntarily and unreasonably encountered a known danger, *Ellithorpe, supra* at 522, and whether the risk or danger was unreasonably dangerous, i.e., "beyond that which

would be contemplated" by an operator with ordinary knowledge common to the community of such operators as to the characteristics of the product. *Orfield, supra* at 964. It is also clear from these decisions that Tennessee has adopted not only § 402A of the Restatement (Second), but also the comments to that section as well. *Orfield, supra* at 963. Comment *i* specifically recognizes that "[m]any products cannot possibly be made entirely safe for all [use], ...." We believe that, when read as a whole, the district court's instruction was a correct statement of the applicable Tennessee law as reflected in this comment, and *Orfield, supra.*

▮ Miller also contends on this appeal that the district court erred when it rejected her requested instruction on the dangerous work place principle. Miller's requested instruction read as follows:

When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, or requires that in the line of duty he take risks which ordinarily a prudent person would avoid, the necessities of such a situation should be taken into consideration in determining the degree of care to be exercised by a person so employed, to the extent that the situation limits the care that he can take for his own safety.

We believe the district court properly rejected this instruction. Miller relies on the decision in *Hellon v. Trotwood Apartments, Inc.,* 62 Tenn.App. 203, 460 S.W.2d 372 (1970), in support of her requested instruction. *Hellon, supra,* held that where a known danger was "not readily avoidable" such that the plaintiff was forced to decide between proceeding through the danger or abandoning his intended course and destination, the question of whether a prudent person would have taken the risk under the circumstances is usually for the jury to decide. 460 S.W.2d at 375. The court specifically noted, however, that where the danger was one that might be readily avoided, the plaintiff's

failure to utilize his opportunity to avoid the known danger would bar his recovery. *Id.*

Miller's own testimony at trial conclusively established that the danger was readily avoidable. She was injured as she left the machine running and walked down the narrow edge of the platform. If she had stepped down from the platform, she could have moved away from the machine, but she did not do so because of her own preference. Thus there can be no reasonable argument that the risk was not readily avoidable.

Accordingly, the judgment for the defendants is hereby AFFIRMED.