758 F.2d 654
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
NAZEM AKL, AKA NICK AKL, DEFENDANT-APPELLANT.
 NO. 84-3444
 United States Court of Appeals, Sixth Circuit.
 2/20/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: KEITH and JONES, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 Per Curiam.
 
 
 1
 Appellant, Nazem Akl a/k/a Nick Akl, appeals his jury conviction for presenting for payment or redemption one hundred fifty-five dollars worth of food coupons in violation of 7 U.S.C. Sec. 2024(c) and 18 U.S.C. Sec. 2. Upon consideration of the issues presented by this appeal, we affirm.
 
 
 2
 * On November 9, 1983, Michael Elliott, a paid FBI informant and Patricia Allegretti, a special agent from the Office of the Inspector General of the U.S. Department of Agriculture, met with Akl in the parking lot of the Lorraine Hotel in Toledo, Ohio. Then, Akl purchased three hundred dollars worth of food coupons for one hundred and fifty dollars. On November 17, 1983, Akl and Alligretti met again. This time, however, Allegretti sold Akl four hundred dollars worth of food coupons for one hundred eighty dollars. The food coupons that Akl purchased on November 9, 1983 and November 17, 1983 were confined to certain serial numbers.
 
 
 3
 After Akl's meetings with Elliott and Allegretti, one hundred seventy dollars worth of the food coupons that Akl purchased on or about November 9, 1983 and one hundred fifty-five worth of the food coupons that Akl purchased on or about November 17, 1983 were endorsed for deposit by 'Our Meat Market,' a store owned by Akl's brother, Ali Akl. Consequently, on December 21, 1983, Akl was indicted on four counts. Count one charged that on or about November 9, 1983 Akl purchased three hundred dollars worth of food coupons in violation of 7 U.S.C. Sec. 2024(b). Count two charged that on or about that same date Akl knowingly and willfully caused to be presented for payment or redemption one hundred dollars worth of those food coupons in violation of 7 U.S.C. Sec. 2024(c) and 18 U.S.C. Sec. 2. Count three charged that on or about November 17, 1983, Akl purchased four hundred dollars worth of good coupons in violation of 7 U.S.C. Sec. 2024(b). Count four charged that on or about that November 17, 1983 Akl knowingly and willfully caused to be presented for payment or redemption one hundred fifty-five dollars worth of those food coupons in violation of 7 U.S.C. Sec. 2024(c) and 18 U.S.C. Sec. 2.
 
 
 4
 Akl pled not guilty to all four counts. After Akl's jury trial commenced, the Government moved to dismiss the second count. The trial, therefore, proceeded only upon counts one and three (purchasing counts) and count four (redemption count).
 
 
 5
 At trial, Akl admitted that he purchased and redeemed the food coupons. He contended, however, that he would not have purchased the food coupons had he not been the victim of entrapment orchestrated by the Government through Elliott and Allegretti. After the close of proof, the court charged the jury by reading written instructions. Akl objected to that charge on the ground that the court unduly emphasized portions of the charge that were detrimental to him. The court overruled Akl's objection and continued to charge the jury. Subsequently, the jury returned a verdict of guilty on the redemption count and a verdict of not guilty on the purchasing counts.
 
 
 6
 Akl now appeals the guilty verdict and asks that this Court reverse his conviction.
 
 II
 
 7
 On appeal Akl contends that his successful defense of entrapment on the purchasing counts demands his acquittal on the redemption count be ause his defense included the entire transaction of purchasing the food coupons and causing them to be presented for payment or redemption. Akl's argument, however, is flawed for several reasons.
 
 
 8
 First, it fails to recognize that in a multiple count indictment each count is considered a separate indictment. Dunn v. United States, 284 U.S. 390, 393 (1932). Second, it fails to recognize that the crimes charged in the purchasing counts are separate and distinct crimes. Compare, 7 U.S.C. Sec. 2024(b) with 7 U.S.C. Sec. 2024(c) and 18 U.S.C. Sec. 2. Third, because Akl admitted purchasing and redeeming the food coupons it appears inconsistent to find him not guilty on the purchasing counts and guilty on the redemption count; however, the jury was free to render inconsistent verdicts. Id. see also United States v. Daniels, 528 F.2d 705, 708 (6th Cir. 1976); United States v. Powell, ---- U.S. ----, ---- S.Ct. ----, 53 U.S.L.W. 4012 (U.S. Dec. 11, 1984). Fourth, as the Government points out Akl's 'argument asumes the jury's finding of not guilty . . . means [that] the jury found . . . him entrapped. While that was the defense theory of the case, the finding of not guilty does not necessarily mean the jury accepted it. The jury rendered a general verdict, unaided by specific findings.' 'Accordingly, all that can be said with certainty from the general verdict is that the government either (1) failed to prove an essential element of the crime beyond a reasonable doubt; or (2) the jury found the crime was induced by the government and the government failed to prove defendant's predisposition to commit the crime beyond a reasonable doubt.'
 
 III
 
 9
 Akl also argues that he was deprived of his right to a fair trial because the trial judge's word choice and intonation unduly emphasized parts of the instructions that were detrimental to him. The trial judge admitted 'reading with expression' and having 'put some emphasis in one place or another,' because 'reading charges . . . gets to be a monotonous business that will put a jury to sleep.' We have concluded, however, that the trial judge's method of delivery and word choice did not constitute plain error. In support of that conclusion we advance the following three reasons.
 
 
 10
 First, the entire charge conveyed to the jury a clear and correct understanding of the applicable law. Second, as long as the whole charge correctly stated the law, selection of the particular words of the instructions was within the trial court's discretion. Third, the charge did not confuse or mislead the jury. Fourth, the jury is presumed to have followed those instructions correctly and as given. Miller v. Utica Mill Specialty Machinery Co., 731 F.2d 305, 307 (6th Cir. 1984) (per curiam).
 
 IV
 
 11
 Akl finally contends that this Court should invoke its supervisory power because the Government's conduct was so outrageous that it violated the principles of due process. Hampton v. United States, 425 U.S. 484, 489 (1976). United States v. Russell, 411 U.S. 423 (1973) and Hampton v. United States, 425 U.S. 484 (1976), however, appear to render Akl's contention frivolous. In Russell the Supreme Court stated 'we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due processes principles would absolutely bar the government from involving judicial process to obtain a conviction . . ..' Russell, 342 U.S. at 431-32 (citation omitted). In Hampton, the Supreme Court not only reiterated that language, 425 U.S. at 489, but also explained its meaning in comparison to the defense of entrapment. Id. at 490.
 
 
 12
 If the result of the governmental activity is to 'implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission . . .,' Sorrells, supra at 442, the defendant is protected by the defense of entrapment. If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law.
 
 
 13
 Id.
 
 
 14
 That comparative explanation is important to the instant case for two reasons. First, it defines the type of conduct that is'out ageous'--that which is beyond the scope of duty. Second, it states the appropriate remedy for that 'outrageous' behavior--prosecution of police, but not freedom of the defendant. Given Russell and Hampton we would conclude that it is unnecessary to determine whether the Government's conduct was 'outrageous' because even if the Government's conduct was 'outrageous,' reversal of Akl's conviction would be an inappropriate remedy because Russell, as explained by Hampton, directs that the remedy for 'outrageous' governmental conduct is prosecution of the Government and not freedom for Akl.
 
 
 15
 Yet, the concurrence in Hampton of Justices Powell and Blackmon indicates their discomfort with the plurality's assertion that conviction is an inappropriate remedy for outrageous police behavior. Hampton, 425 U.S. at 493 (Powell J., concurring). Moreover, our Court has accepted the possibility that a conviction might be overturned 'in order to curb outrageous police conduct.' United States v. Norton, 700 F.2d 1072, 1076 (6th Cir.), cert. denied, ---- U.S. ----, 103 S. Ct. 1885 (1983); see also United States v. Brown, 635 F.2d 1207 (6th Cir. 1980). In light of the above, we believe that we must consider the Government's conduct to determine if it was 'outrageous.' After doing so, however, we believe that the conduct in this case does not warrant reversal of the conviction.
 
 
 16
 For the foregoing reasons, we AFFIRM.