ꙮ **McArthur DAVIS Plaintiff–Appellant,**

**v.**

**KOMATSU AMERICAN INDUSTRIES CORP., et al. Defendants– Appellees.**

**No. 99–5799.**

United States Court of Appeals, Sixth Circuit.

Aug. 29, 2001.

Before ENGEL, NATHANIEL R. JONES, and COLE, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellant, McArthur Davis, who was severely injured when an industrial press severed his hand, appeals the district court's order of summary judgment for Defendants–Appellees in this product liability suit. This Court affirmed the part of the district court's decision which dismissed Davis' failure to warn claim.[1] In a separate order, we certified to the Tennessee Supreme Court the following question which is determinative of the other issues raised in this case: "Does Tennessee products liability law include a 'component parts doctrine' as described by the district court, and if so, what are the precise contours of the doctrine?" The Tennessee Supreme Court held that the component parts doctrine is part of Tennessee law, and that the Restatement (Third) of Torts: Products Liability § 5, and comments thereto, accurately reflect the parameters of the doctrine in Tennessee.[2] In light of the Tennessee Supreme Court's decision, we REVERSE the district court's order of summary judgment.

I.

The facts of this case do not bear repeating as they are described in detail in *Davis v. Komatsu Am. Indus. Corp,* 42 S.W.3d 34 (Tenn.2001) and *Davis v. Komatsu Am. Indus. Corp,* No. 99–5799, 225 F.3d 658, 2000 WL 799329 (6th Cir. June 9, 2000) (unpublished opinion). The sole issue before this court is whether the district court correctly found that Komatsu could not be held liable for Davis' injury because (1) there "is no basis for imposing

liability upon the manufacturer of a product for damage caused by someone else's product, in the absence of proof that [the] damage was caused by a defect in the manufacturer's product" *Davis v. Komatsu Am. Indus. Corp.,* 46 F.Supp.2d 745, 753 (W.D.Tenn.1999) (quoting *Kellar v. Inductotherm Corp.,* 498 F.Supp. 172, 174 (E.D.Tenn.1978)) and (2) "Plaintiff has not adduced evidence that Komatsu was involved with the design of the press line." *Id.*

In the order certifying the question of component part liability to the Tennessee Supreme Court, this Court stated that

If Tennessee were to adopt a doctrine that found component part makers liable when they have substantially participated in the integration of their product into a dangerous end-product, there are sufficient facts in the record to establish Komatsu substantially participated in the integration of its presses into the Sharp line, and that its participation was sufficient to be a cause in fact as well as a proximate cause of Davis' injury.

*Davis v. Komatsu Am. Indus. Corp,* 225 F.3d 658 n. 2 (6th Cir.2000) (unpublished order).

The Tennessee Supreme Court adopted such a doctrine when it concluded that Tennessee law "support[s] the imposition of liability when a component manufacturer substantially participates in the integration of the non-defective component into the design of the final product, if the integration of the component causes the final product to be defective and if the resulting defect causes the harm." *Davis,* 42 S.W.3d at 42.[3] A review of the record

1. *See Davis v. Komatsu Am. Indus. Corp,* No. 99–5799, 225 F.3d 658, 2000 WL 799329 (6th Cir. June 9, 2000) (unpublished opinion).

2. *See Davis v. Komatsu Am. Indus. Corp,* 42 S.W.3d 34 (Tenn.2001)

3. The Tennessee Supreme Court found that Tennessee products liability law includes the component parts doctrine and that Section 5 of the Restatement (Third) of Torts: Products Liability (1998) is an accurate statement of

indicates that there are issues of fact as to whether Komatsu substantially participated in the integration of its press into the press line, whether the integration caused the press line to be defective, and whether the defect in the press line caused the harm.

Comment e to Section 5 of the Restatement (Third) of Torts provides that "[s]ubstantial participation can take various forms. The manufacturer or assembler of the integrated product may invite the component seller to design a component that will perform specifically as part of the integrated product...." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 5 cmt. e (1998). Davis alleges that Komatsu participated in the design of the press line's circuitry to allow its presses to specifically function as a part of the press line. Komatsu's own Statement of Undisputed Facts submitted in support of its Motion for Summary Judgment corroborates Davis' allegation. J.A. at 302 ("Komatsu's presses were wired in a manner so as to accept commands from Orii's controls, which operated the ... press line."). In addition, Kenji Kawaii, a Komatsu service technician, testified in his deposition that prior to the installation of the Komatsu presses on the press line, Orii and Komatsu discussed how Komatsu's presses could be integrated into the Orii control system. J.A. at 418. This evidence when viewed in the light most favorable to the plaintiff is sufficient to create an issue of fact as to whether Komatsu substantially participated in the integration of its presses into the design of the press line. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (for purposes of summary judgment, court must construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party).

"The mere fact that the component seller substantially participates in the integration of the component into the design of a product does not subject the seller to liability unless the integration causes the product to be defective and the resulting defect causes the plaintiff's harm." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 5, cmt. f. Significantly, George Starr, Plaintiff's expert witness, testified that "nothing is wrong [with the Komatsu press] until you start integrating it into ... the system." J.A. at 258. Starr also describes in his expert report how the integration of Komatsu's press into the press line caused plaintiff's injury:

> On the day of the accident the last press in line [Komatsu's press] had been mated to an unloading device manufactured by Orii. Use of this particular unit precluded the use of the photoelectric or light curtain guarding means because

---

the doctrine. Section 5 of the Restatement provides:

> One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:
> (a) the component is defective in itself ... and the defect causes the harm; or
> (b)(1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and

> (2) the integration of the component causes the product to be defective ...; and
> (3) the defect in the product causes the harm.

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 5 (1998). It is undisputed that Komatsu's press was not defective in itself. *See* J.A. at 1538 (Testimony of George Starr, Plaintiff's expert). Rather, the issue is whether Komatsu substantially participated in the integration of its press into the press line, whether the integration caused the line to be defective, and whether the defect in the line caused plaintiff's injury.

part of the unloading device was permanently in the area swept by this guarding means. Alternate guarding was provided by the installation of an expanded metal mechanical guard.

On the day of the accident McArthur Davis, the injured worker, was at his normal work station which was at the unloading apparatus mentioned above. He noticed that a slug was in an improper position in the press die. The line was shut off at the time and he reached around the mechanical guard to remove the slug. At this point the line started again, the press ram came down on Mr. Davis's hand and caused his injury.

. . . .

The guarding means consisting of the fabricated expanded metal device is totally inadequate in that one can easily reach around same and place one's hand or anything else in the area supposed to be guarded against. . . .

J.A. at 1560–61.

Starr's report indicates that the integration of the press into the press line (specifically the "mating" of the press to the unloader) resulted in the de-activation of the "light curtain" which ultimately led to Davis' injury. The purpose of the light curtain is to prevent the press line from starting if there is an object within the press. Davis testified in his deposition that he had been taught that so long as he worked between the light curtain that he could safely work within the press because the presses would not activate. J.A. at 803. The district court recognized that (1) Plaintiff was within the confines of the light curtain when he was injured, (2) that Plaintiff offered evidence that due to the design of the press line, specifically the placement of the unloader, the light curtain on Komatsu's press had to be deactivated, and (3) that the deactivation of the light curtain was the cause of plaintiff's injury. See Davis, 46 F.Supp.2d at 752. Nonetheless, the district court dismissed Davis' claim because Komatsu's press was not defective in itself. Id. Of course, the district court did not have the benefit of the Tennessee Supreme Court decision which held that a component part maker can also be held liable if it substantially participates in the integration of the component into the final product and that integration results in a defective product which causes harm. See Davis, 42 S.W.3d. at 42. Davis has presented sufficient evidence to allow a jury to reasonably conclude that the integration of Komatsu's press into the press line resulted in the deactivation of the light curtain, which in turn was both the cause in fact and the proximate cause of Davis' injury. See Kreuzer v. Brown, 128 F.3d 359, 363 (6th Cir.1997) ("In order to reverse a district court's grant of summary judgment, we must conclude that the evidence presented, if accepted by the jury, is sufficient to permit plaintiff's recovery.") (citing Gregory v.. Hunt, 24 F.3d 781, 784 (6th Cir. 1994)).

## II.

In sum, Davis has produced sufficient evidence to create an issue of fact as to whether Komatsu substantially participated in the integration of its press into the press line, whether the integration caused the press line to be defective, and whether the defect in the press line caused Davis' injury. Accordingly, we REVERSE the district court's order of summary judgment.