Rowe et al., Appellants, *v.* Bliss, Appellee.

(No. C-790186—Decided May 28, 1980.)

*White, Getgey & Meyer Co., L.P.A., Mr. John J. Getgey, Jr., Messrs. Doggett, Haney & Wais* and *Mr. R. Michael McEvilley,* for appellants.

*Messrs. Kohnen & Kohnen* and *Mr. David A. Kohnen,* for appellee.

Castle, J. This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

This appeal is brought by plaintiffs-appellants, Corrine Jean Rowe and Lee Rowe, following the granting of summary judgment to the defendant-appellee in the court below.

Appellant Corrine Jean Rowe was a patient of defendant-appellee, a physician. That relationship terminated on March 11, 1976. On August 11, 1976, the attorney representing appellants sent a letter to appellee stating the following:

"Dear Dr. Bliss:

"This office has been retained by Lee and Corrine Rowe with regard to treatment rendered to Corrine Rowe by you in February and thereafter of this year,***.

"As a result of that treatment, Mrs. Rowe has experienced numerous problems, and you may regard this letter as formal notice of a claim against you therefor.

"Please forward this letter to your professional insurance carrier. Any and all correspondence regarding this matter should be directed to this office.

"Very truly yours,

"DOGGETT & WAIS

"BY: Robert M. McEvilley"

A second letter was sent on February 28, 1977, with this statement:

"Dear Dr. Bliss:

"Pursuant to amended Ohio Revised Code Section 2305.11(A), notice is hereby given that Mrs. Corrine Jean Rowe is presently considering bringing an action against you, relating to professional services provided to her.

"Very truly yours,

"DOGGETT & WAIS

"By: Robert M. McEvilley"

Appellants filed a complaint against appellee on August 25, 1977. On September 22, 1978, appellee filed a motion for summary judgment, maintaining the claim was barred by the statute of limitations of R. C. 2305.11(A). On February 21, 1979, this motion was granted. Appellants brought a timely appeal to this court, stating as their only assignment of error:

"The Court erred in its interpretation of formal notice pursuant to Ohio Revised Code §2305.11[A], thereby failing to distinguish between an individual possessing a medical claim and an individual presently considering bringing an action as a result of that claim."

R. C. 2305.11(A) provides, in pertinent part:

"An action for***malpractice against a physician*** shall be brought within one year after the cause thereof accrued,***.

"If a written notice, prior to the expiration of time contained in this division, is given to any person in a medical claim that an individual is presently considering bringing an action against that person relating to professional services provided

to that individual, then an action by that individual against that person may be commenced at any time within one hundred eighty days after that notice is given."

The court below found that the letter of August 11, 1976 constituted written notice that appellants were "presently considering bringing an action" against appellee under R. C. 2305.11(A). Consequently, the court ruled that, when suit was filed on August 25, 1977, the statute of limitations had run. The cause of action had accrued on March 11, 1976, the date of termination of the patient-physician relationship. See *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164.

Appellants maintain that the first letter notified appellee only that appellants were asserting a claim against him and that all correspondence was to be forwarded to their retained counsel. They insist it was not until the second letter, dated February 28, 1977, that appellants gave notice that they were "presently considering bringing an action" to enforce that claim. The February 28th letter, they argue, then extended the limit for 180 days, making the filing of their complaint on August 25, 1977, within the limit of R. C. 2305.11(A). We agree with this contention.

The purpose of statutes of limitation is "* * * to encourage diligence in the enforcement of demands * * *." 34 Ohio Jurisprudence 2d 487-488, Limitation of Actions, Section 3. However, they are remedial in nature and are to be given a liberal construction to permit the deciding of cases upon their merits, indulging every reasonable presumption and resolving all doubts in favor of giving, rather than denying, the plaintiff an opportunity to litigate. *Draher* v. *Walters* (1935), 130 Ohio St. 92, 94, overruled on other grounds in *Peters* v. *Moore* (1950), 154 Ohio St. 177; *Rahm* v. *Hemsoth* (1976), 53 Ohio App. 2d 147. Where the statute is free from ambiguity, courts are to avoid giving it any construction other than that which the words demand. *Chisnell* v. *Ozier Co.* (1942), 140 Ohio St. 355, paragraph eight of the syllabus; 34 Ohio Jurisprudence 2d 495, Limitation of Actions, Section 11.

Applying these principles to the case *sub judice,* we hold that appellants' letter to appellee, dated August 11, 1976, did not constitute the written notice contemplated by R. C. 2305.11(A). To hold otherwise would extend the application of

the statute beyond what we see as the clear meaning of the words used by the legislature.

In order to invoke the benefit of the possible 180-day extension of R. C. 2305.11(A), notice must be "given to any person in a *medical claim* that an individual *is presently considering bringing an action* against that person," and that the action relates "to professional services provided to that individual" (emphasis added).

The term "medical claim" is defined in R. C. 2305.11 (D)(3):

" 'Medical claim' means any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person."

Appellee argues that, through this definition, the legislature intended the terms "claim" and "action" to be synonymous; consequently, when the August 11th letter notified appellee of a claim, appellants were notifying appellee of an action. We see no basis for this conclusion. Although R. C. 2305.11(D)(3) defines a "medical claim" as a claim "asserted in any civil action," one cannot conclude that the terms "claim" and "action" were intended to be synonymous. Clearly the purpose of R. C. 2305.11(D)(3) is to define a "medical claim," as opposed to other claims, for the application of R. C. 2305.11 and any other relevant statutes.

Although related, the terms "claim" and "action" each have a different significance: the former, meaning asserted right; the latter, meaning legal enforcement of that right. The word "claim" is defined, in part, thusly: *"To demand as one's own or as one's right; to* assert; to urge; to insist. Cause of action.***"* (Emphasis added.) Black's Law Dictionary (5 Ed. 1979), at 224. An "action" is defined, in pertinent part:

"Term in its usual legal sense means a suit brought in a court***. *The legal and formal demand of one's right* from another person or party *made* and insisted on *in a court of justice.* An ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.***" (Emphasis added.) Black's, *supra,* at 26.

And, more importantly, "action" is defined by R. C. 2307.01:

"An action is an ordinary *proceeding in a court* of justice, involving process, pleadings, and ending in a judgment or decree, *by which a party prosecutes another for the* redress of a legal wrong, *enforcement of a legal right,* or the punishment of a public offense." (Emphasis added.)

Applying these definitions to appellants' August 11th letter, it is clear that appellee was notified of a "claim" resulting from treatment rendered by him to one of the appellants, Corrine Rowe. This meets only a part of the requirements of R. C. 2305.11(A). There was no notice that appellants were "presently considering bringing an action" to enforce that claim, and use of the words "formal notice" does not convert it to mean such.

To read into the August 11th letter anything other than notification of a claim and that all correspondence was to be sent to appellants' retained counsel would be to subject numerous such letters to court scrutiny. Appellee suggests that a disclaimer would have avoided the unwanted interpretation, but we do not read the statute or the letter as being so ambiguous as to require such.

The statute clearly requires the individual to give notice that an action is presently being considered and that the action relates to professional services provided to that individual. The letter of August 11th falls short of those requirements. Since the letter of February 28, 1977, clearly did meet the requirements of R. C. 2305.11(A), appellants had 180 days from that time to file their action. Their complaint was filed on August 25, 1977, and was, therefore, within the limit of R. C. 2305.11(A). The assignment of error is well taken and is hereby sustained.

It is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed and*
*cause remanded.*

KEEFE, J., concurs.

PALMER, P. J., concurs in the judgment only.

PALMER, P. J., concurring.   I reach the same result as my

brothers, and would reverse the judgment below; but, I would do so on rather substantially different grounds than those adopted by the majority. Thus, the majority concludes that because the August 11, 1976 letter does not use the phraseology of the statute, *viz.*, that the injured party "is presently considering bringing an action" against the physician, it was insufficient to invoke the statutory extension, and was not, therefore, a "written notice" within the meaning of R. C. 2305.11(A); and, thus, it provided no impediment to the second and—in the opinion of the majority—properly phrased letter.

This conclusion proceeds from a distinction drawn by the majority between the words used by Attorney McEvilley in his letter of August 11, 1976[1]—the relevant portion of which recites that, "[a]s a result of that treatment, Mrs. Rowe has experienced numerous problems, and you may regard this letter as formal notice of a claim against you therefor"—and the requirement of the second paragraph of R. C. 2305.11(A), providing for a 180-day extension of the limitation period from the date that written notice is given "that an individual is presently considering bringing an action against that person relating to professional services." The distinction is found by the majority to lie in the difference between a "claim" and an "action," and the assertion of the former is found not to involve the required assertion of notice of the latter.

With respect, I find the distinction to be artificial and one upon which I am unwilling to predicate a decision. To be sure, the concept of a "claim" is not always perfectly interchangeable with the concept of an "action"; and, while every action presupposes the existence of a claim, there are claims which, for one reason or another, may not mature into an action by the filing of a complaint. Phrased another way, the majority simply draws a distinction between a right (claim) and a remedy (action). While I do not quarrel with the semantic point, I do not see its pertinence in discussing R. C. 2305.11(A), which, in my reading of it, does not invite, invoke, or necessitate the distinction. I do not understand why we labor to distinguish between a right and a remedy where the statute does not require the writer of the notice to express any sort of final, irrevocable election to pursue a remedy, but only to indicate on the notice that he "is presently considering

---

[1] The letter is quoted in the majority opinion.

bringing an action." This language seems to me only to contemplate some form of notice which may be said to fairly inform its reader that the writer is asserting a right and is *presently considering* the invocation of a remedy. Indeed, if the notice accomplishes that purpose, the writer may subsequently change his mind about filing a complaint without, I take it, in any way affecting the legitimacy of the notice.[2] The key to the statute is thus not the *fact* of electing a remedy, but only the consideration of it.

The expression of this concept which seems to me to be embodied in the notice provisions of R. C. 2305.11(A) is, in my judgment, subsumed by the use of the words "claim" or "medical claim," *i.e.,* by a shorthand characterization of the assertion of a right and a present resolution to pursue it in a civil action.[3] I thus conclude that the words used in the August 11th letter ("you may regard this letter as formal notice of a claim against you therefor") were adequate to satisfy the formal requirements of R. C. 2305.11(A) and had this letter been sent at a time when it would otherwise have been effective (see discussion, *infra*), it would have served to extend the limitation period for 180 days. I hope it is not unfair to note my disbelief that if the August 11th letter had been the only letter sent by the claimants and had been sent on the 364th day after the cause of action accrued, it would not have been held effective to extend the limitation period. If I am correct, its wording was no less effective when it was actually sent on August 11th.

Moreover, I believe my reading of the requirements of R. C. 2305.11(A) to be more consistent with what the majority quite properly characterizes as the appropriate judicial attitude in the construction of limitation statutes. If such

---

[2] In point of fact, the purpose of the 180-day extension is doubtless to permit a more leisurely and deliberate investigation of the claim, which may well remove the need for ever asserting an action. By this statutory provision for an extension of the one-year limitation, it is possible to avoid the rush to the courthouse which too often reflects a premature decision based on inadequate investigation.

[3] See, *e.g.,* the definition of the phrase "medical claim" in R. C. 2305.11(D)(3) as a "claim asserted in any civil action." It is also interesting to note that one of the definitions of a "claim" listed by the majority in its citation from Black's Law Dictionary is "cause of action." The phrases are, in my judgment, considerably more interrelated, particularly in the minds of persons for whose benefit the notice provisions were presumably drafted, than the majority would have it.

statutes are remedial in nature and are to be construed liberally to permit the decision of cases on their merits, and if we are to indulge every reasonable presumption and resolve all doubts in form of giving, rather than denying, an opportunity to litigate, then this purpose is served more faithfully, it would seem to me, by the more relaxed reading of the notice language, that I have given it, than by the reading of the majority, which requires the scrivener of the written notice to have the statute in hand so that he may quote properly from it. One can only speculate on the number of persons who may, under the majority rule, be surprised to learn that their written notices were ineffectively phrased to extend the limitation period.

Nevertheless, I agree that the judgment of the trial court must be reversed. I reach this conclusion, not because the *language* of the August 11th letter was inadequate to invoke the delay, but because the letter itself was a nullity, having no legal effect or significance. It will be recalled that the instant cause of action accrued on March 11, 1976. The letter of August 11, 1976, was, therefore, sent a bare *five months* after the action accrued. To give this letter any legal significance as a written notice of extension under R. C. 2305.11(A) would, literally taken, *reduce* the one-year limitation period to eleven months. Thus, R. C. 2305.11(A) provides, in relevant part:

"If a written notice, prior to the expiration of time contained in this division, is given to any person in a medical claim that an individual is presently considering bringing an action against that person relating to professional services provided to that individual, then an action by that individual against that person may be commenced *at any time within one hundred eighty days after that notice is given.*" (Emphasis added.)

Here, 180 days after the August 11th notice was given would have been February 7, 1977, a full month short of the regular limitation period of one year. Such a result would be an absurdity, not to be considered as within the contemplation of the legislature. Obviously, any written notice, to have any effect under R. C. 2305.11(A), must be one given within the last six months of the one-year limitation period, *i.e.,* a timely notice serving to *extend,* to some degree, the one-year period otherwise applicable. Otherwise, the legislative purpose served by the statutory provision is simply frustrated.

If a response is made to my argument that the August 11th letter, being infirm only in its *untimeliness* and not in its phraseology, nevertheless exhausted the single opportunity of the claimant to avail himself of his right to an extension of time, I would answer that this result seems to me unduly harsh and unnecessary. If, as I believe, the August 11th letter, given during the first six months of the one-year period, was a nullity, having no effect of either extending or reducing the limitation period, then it should serve as no impediment to a later and timely written notice. Since such a later and timely written notice *was* here given on February 28, 1977, I agree with my brothers that the judgment below should be reversed.