870 F.2d 657
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Karen BYARD, Brian L. Byard, Plaintiffs-Appellants,
v.
Nicholas VORYS, M.D., Infertility and Gynecology, Inc.,
Defendants-Appellees,
St. Anthony Medical Center, Defendant.
 Nos. 88-3345, 88-3706.
 United States Court of Appeals, Sixth Circuit.
 March 7, 1989.
 
 Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This diversity case involves Ohio's medical malpractice statute of limitations. Ohio Rev.Code Ann. Sec. 2305.11. The specific issue in this case involves the provision of section 2305.11 which allows for an extension of the limitation period by giving notice of consideration of an action. During the relevant time period, section 2305.11(A) read as follows:
 
 
 2
 If a written notice, prior to the expiration of time contained in this division, is given to any person in a medical claim that an individual is presently considering bringing an action against that person relating to professional services provided to that individual, then an action by that individual against that person may be commenced at any time within one hundred eighty days after that notice is given.
 
 
 3
 Ohio Rev.Code.Ann. Sec. 2305.11 (Page 1981) (emphasis added).
 
 
 4
 Plaintiffs Karen and Brian Byard appeal from the district court's dismissal of their medical malpractice action brought against defendants Dr. Nicholas Vorys, Infertility and Gynecology, Inc., and St. Anthony Medical Center.[1] The appellants argue that the district court erred in holding that their action was untimely. For the following reasons we reverse the judgment of the district court.
 
 I.[2]
 
 5
 On December 18, 1985, Mrs. Byard consulted Dr. Vorys concerning a progressive endometrial disease. Dr. Vorys recommended operative laparoscopy with laser. On February 19, 1986, Dr. Vorys performed the laparoscopy with laser at St. Anthony Hospital. Mrs. Byard was discharged the same day, and began immediately to experience pain. On February 20, 1986, Mrs. Byard continued to experience severe pain, nausea, dizziness, vomiting, and elevated temperature. She called Dr. Vorys' office seeking help and was advised to apply heat to her chest, continue taking her temperature and continue the antibiotic medication. On February 21, 1986, Mrs. Byard went to the Emergency Department of the Ohio State University Hospitals. She was begun on intravenous hydration with triple antibiotics and was admitted with a diagnosis of perforated sigmoid colon and bilateral pleural effusions. She underwent an exploratory laparotomy with sigmoid colon resection with end colostomy and mucous fistula with placement of the pelvic drains. She was discharged from the Ohio State Hospital on March 13, 1986.
 
 
 6
 Thereafter, appellants retained attorney Gregg Neal to represent them. On September 9, 1986, Neal sent the following letter to Dr. Vorys:
 
 
 7
 Please be advised that we have been retained by Mr. & Mrs. Byard to pursue a medical negligence case against you regarding your treatment of her February 18, 1986 and thereafter.
 
 
 8
 May I suggest that you contact your insurance carrier and have them contact me directly so that we may discuss the case in detail. Specifically, it is apparent through a review of the file that your operative procedure resulting in a perforated sigmoid colon and lack of follow-up treatment with regard to her was below the standard of care.
 
 
 9
 We would like to resolve this matter without litigation and that is why we ask that your insurance carrier contact us directly concerning the case.
 
 
 10
 After Neal and the appellees' insurance carrier traded correspondence concerning appellants' allegations, appellants retained different counsel. This counsel sent the following letter to Dr. Vorys on February 4, 1987:
 
 
 11
 This letter of notice is written pursuant to the provisions of Ohio Revised Code Section 2305.11(A). This is to advise you that Karen Byard is presently considering filing a medical malpractice action against you in relation to professional treatment rendered by you.
 
 
 12
 Section 2305.11(A) of the Ohio Revised Code grants us an additional 180 days before this action must be filed and we will utilize that time to conduct a comprehensive and confidential investigation of this potential case. This office is very conscientious in the evaluation of potential medical malpractice cases and we will not become involved in a case unless we are unequivocally convinced of its merit.
 
 
 13
 Please notify your attorney or insurance carrier of this notice.
 
 
 14
 On July 31, 1987, appellants filed their complaint in district court.[3] Appellant alleges that Vorys' treatment of her was below the accepted standards of care, skill and diligence for physicians practicing gynecological surgery in the United States. In addition, she claims that Infertility and Gynecology, Inc. breached its duty of reasonable care to her through its employees, including nurses and Vorys. Likewise, she asserts that the acts of Vorys and nurses and other employees of St. Anthony Medical Center fell within the scope of their authority as servants or agents of St. Anthony Medical Center, and that St. Anthony Medical Center failed to promulgate and enforce safe hospital care to the extent of hospital corporate negligence.
 
 
 15
 Karen Byard claims that as a result of the appellees' failure to meet their respective standards and duties of care, she suffered personal injuries including severe anxiety, additional surgery, physical pain and suffering and emotional distress.
 
 
 16
 Brian Byard claims that as a result of appellees' failure to exercise reasonable care he lost the support, services, companionship and consortium of his wife, Karen Byard, and that he suffered extreme emotional distress and mental anguish.
 
 
 17
 On August 21, 1987, defendants Vorys and Infertility and Gynecology, Inc. filed a motion to dismiss under rule 12(b)(6). On March 18, 1988, the district court entered a memorandum and order dismissing appellants' action as untimely. The court held that the February 4, 1987 letter did not act to extend the one year statute of limitations for malpractice actions, because the September 9, 1986 letter was a notice letter pursuant to section 2305.11(A).[4] Appellants timely appeal.
 
 
 18
 Appellants assert that the district court erred in its interpretation of section 2305.11(A) and in its determination that the September 9th letter was a proper notice letter. They assert that the letter was a routine letter of representation and that statutory notice was not given until February 4th. We agree.
 
 II.
 
 19
 In diversity actions, "our responsibility is to determine and apply the law of [the forum state]. If the law of that state on the subject has not been clearly delineated, it is our duty to forecast as best we can from available sources what the Supreme Court of the state would do if presented with the same issue." Orfield v. International Harvester Co., 535 F.2d 959, 965 (6th Cir.1976). (per curiam).
 
 
 20
 Ohio law provides that: "Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice." Ohio Rev.Code Ann. Sec. 1.11 (Page 1984). The Ohio Supreme Court has held that statutes of limitations are remedial in nature. Gregory v. Flowers, 32 Ohio St.2d 48 (1972). In Rahm v. Hemsoth, 53 Ohio App.2d 147 (Lucas County Ct.App.1976), the court made the following comments concerning the application of statutes of limitation:
 
 
 21
 A statute of limitation ... is remedial in nature and is to be given a liberal construction to permit the deciding of cases upon their merits. R.C. 1.11; Gregory v. Flowers (1972), 32 Ohio St.2d 448; Cf. Labarbera v. Batsch (1967), 10 Ohio St.2d 106, 114 and Cero Realty Corp. v. American Manufacturers Mutual Ins. Co. (1960), 171 Ohio St. 82. The liberal construction of a statute requires that 'every reasonable presumption will be indulged and every doubt will be resolved in favor of affording rather than denying a plaintiff his day in court.'
 
 
 22
 Id. at 149.
 
 
 23
 The Ohio Supreme Court has yet to address this issue and only one Ohio appellate court has directly addressed it. See Rowe v. Bliss, 68 Ohio App.2d 247 (Hamilton Cty.Crt.App.1980).[5]
 
 
 24
 In Rowe, the medical malpractice claim accrued on March 11, 1976. On August 11, 1976 the attorneys for the claimant sent a letter which contained the following pertinent language: "As a result of that treatment, Mrs. Rowe has experienced numerous problems, and you may regard this letter as formal notice of a claim against you therefor." Id. at 248. On February 28, 1977 a letter containing the following language was sent: "Pursuant to amended Ohio Revised Code Section 2305.11(A), notice is hereby given that Mrs. Corrine Jean Rowe is presently considering bringing an action against you, relating to professional services provided to her." Id. Mrs. Rowe filed her complaint on August 25, 1977. The trial court dismissed the complaint as untimely, finding that the August 11th letter was written notice that Rowe was presently considering bringing an action.
 
 
 25
 The court of appeals reversed. The court noted that the statute required the claimant to give notice that an action is presently being considered and that the action relates to professional services provided to that individual. The court distinguished the words "claim" and "action" and held that the letter which gave notice of a "claim" did not satisfy the requirements of the statute because it did not give notice that the claimant was considering an "action".
 
 
 26
 The district court in the instant case focused on appellant's attorney's use of the word "case" in the first letter, and found that the term is synonymous with the statutory term "action" in holding that the September 9th letter was a notice letter. Although the district court's analysis is sound if one focuses on a single word in appellant's letter--in this case the word "case"--we do not agree with this approach.
 
 
 27
 Since remedial laws are construed liberally to promote and assist in the attainment of justice we believe that under Ohio law a reviewing court should look at the contents of the entire letter in determining whether it serves as statutory notice.[6] We also believe that when the language in an alleged notice letter is ambiguous, the objective circumstances should also be viewed to determine whether the letter should be considered a notice letter. See e.g. Rowe, 68 Ohio App.2d 254 (Palmer, J. concurring) (fact that letter was sent five months after accrual makes letter a nullity having no legal effect or significance).
 
 
 28
 In this case, appellants' first counsel sent a letter which "advised" appellee that he had been retained to pursue a claim. Appellants' second counsel sent a letter which tracked the language of the statute. If no statutory notice had been sent in this case, the statute of limitations would have expired on February 21, 1987. If the first letter was viewed as a statutory notice letter, the statute of limitations would have expired on March 8, 1987. Finally, if the first letter was not a statutory notice letter the second letter would have acted to extend the statute of limitations which would have then expired on August 3, 1987. We note at the outset that appellant's first letter does not use the words "action" or "notice" and merely "advises" defendant that appellants had retained counsel to "pursue a medical negligence case." The court notes that it is common practice for an attorney to send a letter of representation to his client's adversary in order to protect his client's and his own interests and believes that courts should view initial correspondence from potential plaintiffs closely to ensure that a plaintiff's rights to redress are not abridged by poor draftsmanship. Given the liberal construction mandated by section 1.11, we believe the September 9th letter was only a letter of representation and was not a notice letter that extended the statute of limitations as provided by section 2305.11(A). Our conclusion is bolstered by the fact that the September 9th letter was sent only six and one half months after appellants' action accrued, and would only have extended the running of the statute of limitations by approximately two weeks. Had this letter been more explicit, or had it provided a greater extension of the statute of limitations we may have reached a different result. But that is not the case before us.
 
 
 29
 Accordingly, viewing the September 9th letter in its entirety and considering the timing of its delivery we hold that the September 9th letter was not a statutory notice letter, and that the February 4th letter was effective to extend the statute of limitations. Therefore, appellant's complaint was not untimely.
 
 
 30
 For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings.
 
 
 
 [1]
 Defendant St. Anthony Medical Center is not a party to this appeal
 
 
 [2]
 Since the district court granted defendants' motion to dismiss, the facts concerning appellants' claims are taken from their complaint
 
 
 [3]
 Jurisdiction was based on diversity of citizenship. The appellants were residents of West Virginia while the appellees were residents of Ohio
 
 
 [4]
 Under this ruling the statute of limitations would run 180 days after September 9th or March 8, 1987. See Glenboski v. St. Alexis Hospital, 65 Ohio App.2d 165, 1168 (Cuyahoga Cty.Ctr.App.1979) ("If written notice is given less than 180 days prior to the end of the one year period from the date of accrual of the cause of action, then the extension period of 180 days from the date of the notice will control the filing of the complaint.")
 
 
 [5]
 The appellant cites to Nipps v. Doctors Hospital North, No. 77AP-943 (Franklin County Court of Appeals May 16, 1978). This brief decision also involved a situation where two notices were sent by the claimant. The court of appeals found that the second notice was effective because the first notice may not have been sufficient. However, the court does not give the language of either notice nor does it go into any analysis. Given the court's lack of analysis, the Nipps decision is of little guidance in the instant case
 
 
 [6]
 Although the Rowe court analyzed the single word claim in the letter in question, this does not conflict with our view of the law since the court was faced with a letter which was expressly labelled a formal notice, thereby making the word claim the determinative word in the letter