**Joel I. CURTIS, a minor through his guardian, natural mother and next friend, Deborah R. CURTIS, Plaintiffs,**

v.

**UNIVERSAL MATCH CORPORATION, INC. a corporation d/b/a Feudor and Feudor S.A., Defendants.**

No. CIV–1–89–280.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Sept. 27, 1991.

Paul H. Dietrich, Dietrich & Dietrich, Cleveland, Tenn., Ralph F. Sbrogna, Richard J. Pentland, Anderson, Pentland & Sbrogna, Worcester, Mass., Randy Wilson, Roger W. Dickson, Miller & Martin, Chattanooga, Tenn., for Universal Match.

Bill Luther, Luther, Anderson, Cleary & Ruth, P.C., Chattanooga, for Pope & Talbot, Inc. & Pope & Talbot Wisconsin, Inc., for defendants.

Phillip Durrence, Jr., Hall, Haynes, Lusk & Foster, Chattanooga, Tenn., for Universal Creative Concepts.

Robert M. Sussman, Peter L. Winik, Latham & Watkins, Washington, D.C., for Universal Match Corp., Inc.

## MEMORANDUM

EDGAR, District Judge.

This is a products liability action in which the Court's diversity jurisdiction has been invoked under 28 U.S.C. § 1332. The matter presently before the Court is a motion by defendants Universal Match Corporation, Inc. ("Universal Match") and Feudor S.A. ("Feudor") for summary judgment. (Court File No. 66). After carefully reviewing the record and the applicable law, the Court concludes that the motion will be GRANTED.

### I. Standard of Review

Fed.R.Civ.P. 56(c) provides that summary judgment shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir.1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36.

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*,

822 F.2d at 1435. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. Only factual disputes which are both genuine and material will preclude the entry of summary judgment. The standard for summary judgment mirrors the standard for directed verdict. *Id.*

> If the defendant in a ... civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakeably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512.

## II. Facts

Plaintiffs allege that on May 17, 1986, Joel Curtis suffered personal injuries when the diaper he was wearing was set on fire by his brother, Joshua, with a disposable butane cigarette lighter manufactured by Feudor and distributed by Universal Match. At the time of this incident, Joel Curtis was two years and four months in age, and Joshua was three years and nine months old. The accident occurred when the boys' father, Aqua Curtis, left both children alone, unattended, and asleep in the rear seat of his automobile while he was visiting at the home of a friend. The father left his cigarette lighter on the dashboard of his car in plain view of the children. Joshua awoke, began playing with the lighter, and set fire to Joel's diaper.

The package in which the lighter was sold had a printed warning which stated "KEEP OUT OF REACH OF CHILDREN." The lighter itself did not have any such warning printed directly on it. The lighter was in good working order, but plaintiffs allege that it was defective in that the lighter was not designed to be childproof or child resistant and did not have an adequate warning.

The parents of the minor plaintiff, Aqua and Deborah Curtis, testified in their depositions that they had prior knowledge about the danger of leaving a cigarette lighter near their son, Joshua. Deborah Curtis testified she knew it was unsafe to leave lighters around children and she had previously admonished Aqua Curtis not to leave his lighters within the reach of their children. Moreover, Mr. Curtis knew that Joshua had a prior history of playing with lighters. Mr. Curtis had disciplined Joshua before the accident on at least three occasions for playing with lighters. Mr. and Mrs. Curtis testified that although they had observed Joshua playing with and attempting to operate lighters, they had never seen Joshua actually succeed in operating a lighter to produce a flame.

## III. Theories of Liability

Plaintiffs have asserted claims against Universal Match and Feudor under the Tennessee Products Liability Act, Tenn. Code Ann. §§ 29–28–101—29–28–108, on the theories of strict liability, negligence, and breach of implied warranty. Plaintiffs allege that the lighter was defective and unreasonably dangerous to foreseeable users such as Joel Curtis in that: (1) the product was inadequately tested and inspected to ensure that it would be safe; (2) the product was designed, manufactured, marketed and sold without being made "child-proof" for the protection of children such as Joel Curtis; and (3) the product lacked adequate, proper instructions and warnings to purchasers and users as to the known dangers associated with the use of lighters.

In addition, plaintiffs assert a claim under the Consumer Product Safety Act, 15

U.S.C. §§ 2051–2084 ("CPSA"). Although plaintiffs also sought to state a claim in the amended complaint under the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261–1277 (Court File No. 44, p. 14), plaintiffs have conceded that this claim should be dismissed. In their brief in opposition to the defendants' motion for summary judgment, plaintiffs state: "The Plaintiff is withdrawing his claim under the Federal Hazardous Substances Act. While the Plaintiff still believes that the Defendant's *[sic]* are in violation of the acts *[sic]*, there is no cognizable private cause of action under the act." (Court File No. 80, p. 20 n. 5). Accordingly, the plaintiffs' claim brought pursuant to the Federal Hazardous Substances Act will be dismissed. *Sparks v. Metalcraft, Inc.,* 408 N.W.2d 347 (Iowa 1987).

## IV. Analysis

This is a diversity case in which the *Erie* doctrine applies. *Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The substantive law of Tennessee governs the plaintiffs' tort and contract claims, and federal law governs the plaintiffs' claims brought under the CPSA.

### A. Tennessee Products Liability Act

The Tennessee Products Liability Act ("the Act") requires that in order for the plaintiffs to prevail on their theories of negligence, strict liability, and breach of implied warranty, plaintiffs must first prove that the lighter in question was either defective or unreasonably dangerous at the time it left the control of the manufacturer or seller. Tenn.Code Ann. §§ 29–28–102(6) and 29–28–105(a). Section 29–28–102(2) provides that the term "defective condition" means "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption."

Section 29–28–102(8) provides:

"Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteris-

tics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition.

Furthermore, § 29–28–105(d) provides that "[a] product is not unreasonably dangerous because of failure to adequately warn of a danger or hazard that is apparent to the ordinary user."

Tennessee has thus codified what is commonly referred to as the "consumer expectations" test. Under the Act, plaintiffs must prove "that the condition complained of is beyond contemplation of the ordinary consumer, with the ordinary knowledge common to the community as to its characteristics." *Higgs v. General Motors Corp.,* 655 F.Supp. 22, 26 (E.D.Tenn. 1985), *aff'd,* 815 F.2d 80 (6th Cir.1987). In a products liability action involving a minor plaintiff who is injured by a product designed for use by adults, the question of whether a product is unreasonably dangerous is premised upon the contemplation of an ordinary adult consumer rather than the viewpoint of the minor child. *Reece v. Lowe's of Boone, Inc.,* 754 S.W.2d 67, 71 (Tenn.App.1988); *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984); *see also Kelley By and Through Kelley v. Rival Mfg. Co.,* 704 F.Supp. 1039, 1043 (W.D.Okla.1989); *Bellotte v. Zayre Corp.,* 352 A.2d 723 (N.H.1976). In the present case, the intended and ordinary consumer of a cigarette lighter is an adult, and such lighters are obviously designed exclusively for use by adults.

### B. Adequate Warning

Defendants contend they are entitled to have summary judgment entered in their favor dismissing the claim that they manufactured and sold the lighter without an adequate warning. Defendants first argue that they were not required to provide any warning concerning the danger the lighter posed to children. A product is not unreasonably dangerous because of a failure to adequately warn of a danger which is apparent to the ordinary user. Tenn.

Code Ann. § 29–28–105(d); *Pemberton,* 664 S.W.2d at 692–93. It is the defendants' position that the danger of leaving a lighter available to an unsupervised child is obvious to the ordinary consumer and the danger was well known to Deborah and Aqua Curtis. Mrs. Curtis gave the following testimony in her deposition:

Q. Did you instruct Aqua not to leave lighters laying around?

A. Yes. I've tried.

Q. Several times?

A. Yes.

Q. Why did you do that?

A. Because they're dangerous. I didn't want the kids to play with them.

Q. Well, why not?

A. Because I didn't want them to get hurt.

Deborah Curtis Deposition, p. 101.

Q. If you recall, on how many occasions had you told Aqua not to leave lighters laying around the house or where the kids could get them?

A. A few. I don't know.

Q. There's no question in your mind that he knew he shouldn't do that?

A. *Any normal human knows.*

Q. Would you agree that it's not a good practice to leave lighters laying around kids?

A. Yes.

*Id.* at 126 (emphasis added).

Aqua Curtis also concedes that he knew that it was unsafe to leave his lighter in Joshua's presence:

Q. Had you ever known [Joshua] to play with your lighter?

A. Yes.

Q. You had?

A. Yes.

Q. Well, what was your response to that?

A. I told him not ever to play with it and I spanked him for it.

Q. Well, on how many occasions had you done that?

A. Oh, at least three. At least three times probably.

Aqua Curtis Deposition, p. 97.

Q. Why had you instructed [Joshua] not to play with your lighter?

A. Because, you know, he had tried—he kept trying to get it to light and I could see trouble, you know. If he was to ever get it to light, he could catch the house on fire or something and, you know, I just told him several times at least.

*Id.* at 98.

■■■■ Defendants further argue that even though the danger to unsupervised children was obvious to an ordinary consumer, they did place an adequate warning on the lighter's package which stated: "KEEP OUT OF REACH OF CHILDREN." A warning is adequate as a matter of law if it is "one calculated to bring home to a reasonably prudent user of the product the nature and extent of the danger involved in using the product." *Trimble v. Irwin,* 441 S.W.2d 818, 822 (Tenn. 1968); *Evridge v. American Honda Motor Co.,* 685 S.W.2d 632, 636–37 (Tenn.1985). "The warning should be such that if followed it would make the product safe for users." *Abbott v. American Honda Motor Co.,* 682 S.W.2d 206, 210 (Tenn.App.1984); *Cansler v. Grove Mfg. Co.,* 826 F.2d 1507, 1511 (6th Cir.1987), *cert. denied,* 485 U.S. 962, 108 S.Ct. 1227, 99 L.Ed.2d 427 (1988). The adequacy of the warning is a jury question unless reasonable minds could agree on the outcome. *Evridge,* 685 S.W.2d at 637; *Young v. Reliance Elec. Co.,* 584 S.W.2d 663, 668 (Tenn.App.1979).

Based on the facts of record taken as a whole, this Court concludes that there is no probative evidence which would lead a rational jury to reasonably find that the warning on the lighter package was inadequate. The warning "KEEP OUT OF REACH OF CHILDREN" is sufficiently calculated to notify a reasonably prudent, ordinary consumer about the nature and extent of the danger involved in leaving a lighter around unsupervised children. If Aqua Curtis had heeded and complied with the defendants' warning, plaintiff Joel Curtis would not have been injured. *Cansler,*

826 F.2d at 1511. Moreover, Deborah and Aqua Curtis admit that they knew of the dangers of allowing unsupervised children to play with lighters. Therefore, the warning by defendants was more than adequate under these facts and circumstances. The plaintiffs' claim of lack of an adequate warning will be dismissed.

### C. Child–Resistant Design

■ Although the lighter in question was in good working order, plaintiffs claim it was either defective or unreasonably dangerous because the lighter was not designed to be child-resistant. Defendants argue they are entitled to summary judgment because plaintiffs cannot offer any probative evidence to establish that the lighter was defective or unreasonably dangerous. Defendants cite various reported cases from other jurisdictions which, like Tennessee, utilize a consumer expectations test in products liability actions. These cases are cited by defendants for the proposition that where an adult product is safe for the ordinary adult consumer but an obvious danger would exist if the product is left near or in the hands of a child, the manufacturer does not have a legal duty to make the product child-proof. *Kelley*, 704 F.Supp. at 1043–44 (crock-pot found not unreasonably dangerous because there was no evidence showing that it was more dangerous than the average consumer would expect and the risk of harm to unsupervised children was obvious to an ordinary consumer. Manufacturer was under no duty to make a child-proof product); *Brawner v. Liberty Industries, Inc.*, 573 S.W.2d 376, 377–78 (Mo.Ct.App.1978) (manufacturer under no legal duty to make gasoline container child-proof); *Rhodes v. R.G. Industries, Inc.*, 173 Ga.App. 51, 325 S.E.2d 465, 466 (1984) (handgun). Defendants further cite *Sedlock v. BIC*, 741 F.Supp. 175 (W.D.Mo.1990), and *Eads By Eads v. BIC Corp.*, 740 F.Supp. 1433 (W.D.Mo.1989), which were products liability actions involving cigarette lighters wherein the federal courts exercising their diversity jurisdiction followed the *Brawner* decision as the applicable substantive law in Missouri.

Although there may well be a trend developing in some other states where manufacturers in products liability cases are held to have no legal duty to make their adult products child-resistant, the Court in the case at bar sitting in diversity is bound to follow the substantive law of Tennessee. The parties have not cited and this Court has not found any reported Tennessee cases' which address this particular question. In the absence of Tennessee law directly on point, this Court must apply the standard consumer expectations test codified in the Tennessee Act and enunciated by the Tennessee courts. In other words, the Court declines the defendants' invitation to create a new legal doctrine under Tennessee law to the effect that manufacturers have no legal duty to design their adult products to be child resistant. The subject is best left to the courts and Legislature of Tennessee.

■ The general rule in Tennessee is that the issue of whether a product is defective or unreasonably dangerous is one for the jury. *Jackson v. Tennessee Valley Authority*, 413 F.Supp. 1050, 1058 (M.D.Tenn.1976); *Young*, 584 S.W.2d at 668; *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276 (Tenn.App.1977); *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 523 (Tenn.1973). The Sixth Circuit has stated that under a pure consumer expectations test, the issue of whether the particular danger posed by a product is beyond the expectation of an ordinary consumer is normally to be determined by a jury. *Birchfield v. International Harvester Co.*, 726 F.2d 1131, 1135–36 (6th Cir.1984). However, various courts applying Tennessee law have, under circumstances where the danger is obvious to the ordinary consumer, entered summary judgments or directed verdicts in favor of defendant manufacturers in products liability cases. *See, e.g., Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 692–93 (Tenn. 1984) (court found that the dangers of the use of alcohol are of common knowledge to the extent that the product cannot be considered to objectively be unreasonably dangerous and that "[f]acts which are univer-

sally known may be judicially noticed provided they are of such universal notoriety that they may be regarded as forming a part of common knowledge of every person"); *Higgs,* 655 F.Supp. 22 (summary judgment granted against plaintiff who alleged a car manufactured without an air bag was defective or unreasonably dangerous); *Reece,* 754 S.W.2d 67 (summary judgment affirmed against plaintiff who alleged go-kart without safety flag was defective or unreasonably dangerous); *Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230, 236 (6th Cir.1988) (district court's directed verdict in favor of cigarette maker affirmed on the basis that "extensive information regarding the risks of smoking available to the public during that time precluded the existence of a jury question as to whether cigarettes are unreasonably dangerous").

Defendants also cite two unpublished opinions which merit discussion. *Scarpetta v. BIC Pen Corp.,* Case No. 84–C–20352, 1990 WL 52986, 1990 U.S.Dist.LEXIS 5119 (N.D.Ill.), was a products liability action involving personal injuries where the shirt of an unsupervised child accidentally caught fire from a disposable butane cigarette lighter. The district court applied the Illinois consumer expectation test which is the same as Tennessee's and granted summary judgment in favor of the manufacturer on the plaintiff's strict liability claim. It held that the ordinary consumer of a lighter is an adult who is capable of contemplating the danger of the product's characteristics. A lighter is not unreasonably dangerous because it is not dangerous to an extent beyond which the ordinary adult consumer is capable of contemplating. Moreover, the lighter was not defective because it did not fail to perform in the manner expected considering its nature and intended function. (Court File No. 67, Exhibit 6).

The second unpublished opinion of significance is *Silver v. National Presto Industries, Inc.,* No. 88–6305, slip op. (6th Cir. Sept. 15, 1989), 884 F.2d 1393 [(table)][1] wherein the Sixth Circuit affirmed a direct-

ed verdict in favor of a defendant-manufacturer in a products liability action applying the Tennessee Products Liability Act. (Court File No. 67, Exhibit 12). In *Silver,* a thirteen-month old child was injured when he pulled a portable deep-fat fryer off a counter in his mother's kitchen accidentally spilling very hot oil on himself. The mother filed suit as next friend for her child based on a claim of negligence alleging that the fryer was unreasonably dangerous and defective because the manufacturer should have affixed additional warnings to the product and also included a locking lid safety feature to enclose the top of the fryer to help prevent injuries from accidental spills of the hot oil. The mother admitted having read and understood the instruction booklet that accompanied the fryer which contained cautionary warnings about the necessity of close supervision when the fryer was used in the presence of children and that the fryer's electrical cord should not be permitted to hang over the edge of a table or counter top. The mother also sought to produce evidence that it was technically feasible to design a locking lid but the Sixth Circuit concluded that although the manufacturer's failure to incorporate this possible safety feature had some evidentiary value, it did not, standing alone, render the fryer defective or unreasonably dangerous. Silver did not produce any other fryers on the market during this period of time that had locking lids.

The Sixth Circuit in *Silver* affirmed the district court's directed verdict because there was no evidence that the fryer was either defective or unreasonably dangerous. It is helpful to quote two key excerpts from the *Silver* opinion to show the manner in which the Sixth Circuit analyzed the legal questions presented:

> Based on the evidence before the district court, we conclude that Silver failed to establish a jury question as to whether the Fry Daddy was defective or unreasonably dangerous. The terms defective condition and unreasonably dangerous

---

**1.** Although Sixth Circuit Local Rule 24(c) disfavors the citation of unpublished opinions by counsel, this Court finds that citation to the unpublished *Silver* opinion is appropriate in the instant case because of its precedential value to the adjudication of a material issue.

both focus on "what is anticipated or contemplated by the ordinary consumer." *Higgs [v. General Motors Corp.],* 655 F.Supp. [22,] 26 [E.D.Tenn.1985]. *See also Roysdon [v. R.J. Reynolds Tobacco Co.],* 849 F.2d 230 [ (6th Cir.1988) ]. Although Silver is correct that section 29–28–105(d) provides that a product is not unreasonably dangerous *based on a failure to adequately warn* when a product's dangers are readily apparent, she is incorrect in claiming that a consumer's knowledge about a product's inherent hazards do not influence whether a product is unreasonably dangerous *based on a design defect* rather than on a failure to warn. It is true that subsection (d) of section 29–28–105 of the Act provides that a product is not "unreasonably dangerous" because of a failure to warn adequately when a product's dangers are apparent to the product's ordinary user. Nevertheless, the Act's definition of unreasonably dangerous contains no such restriction. That definition encompasses a condition dangerous to an extent beyond that contemplated by the ordinary consumer/purchaser of the product or a condition so dangerous that it would not be put on the market by a reasonably prudent manufacturer knowing of that condition. We cannot see that the fryer was any more dangerous than contemplated by Silver who, as noted, took active steps to protect her children from the dangers she fully appreciated as inherent in the fryer. Moreover, section 29–28–105(b) provides that the determination of whether a product is defective or unreasonably dangerous is to be made as of the time the product was marketed, considering available technology and knowledge, customary designs, techniques, methods, etc., of manufacturers of similar products. Silver was unable to demonstrate that the Fry Daddy design significantly deviated from any other deep fat fryer marketed at the time.

. . . .

As for Silver's contention that the Fry Daddy was in a defective condition, we note that "consumer knowledge about the risks inherent in the use of a product is one factor to be considered when determining if a product is defective." *Roysdon,* 849 F.2d at 236. As noted, other factors to consider in assessing a product's defectiveness include technology, knowledge, customary designs, etc., of similar products at the time of manufacture. *See* Tenn.Code Ann. § 29–28–105(b). By definition, a defective condition must render a product "unsafe for normal or anticipatable handling and consumption." Tenn.Code Ann. § 29–28–102(2). That the Fry Daddy conformed to Silver's normal or anticipated use is supported by her regular and satisfactory use of the product for some six to seven years. That she contemplated and thoroughly appreciated the dangers of the fryer to her children is evidence by her cautionary measures and rules employed while using the fryer. That the product was not defective due to its design was supported by the nearly identical design employed by other manufacturers of deep fat fryers. As the Tennessee court noted in *Kerley [v. Stanley Works],* 553 S.W.2d [80], 84 [Tenn.App. 1977], " 'a departure from the required standard of care is not demonstrated where it is simply shown that there was a better, safer, or different design which would have averted the injury.' " (Citation omitted). . . . The district court noted that deep fat fryers are obviously dangerous and unavoidably unsafe, and that even though a lid or a better warning might improve the product, the product would remain obviously dangerous and unavoidably unsafe.

*Id.* at 6–8 (footnote omitted).

In the case at bar, the Court concludes that plaintiffs have failed to establish a genuine issue of a material fact which should go to a jury. The lighter was not defective under the Act because it performed in the manner expected considering its nature and intended function. The lighter produced a flame when operated which conformed to its normal and anticipated use. Plaintiffs have not submitted any probative, admissible proof that the lighter in question significantly deviated

from other lighters that were on the market at the same time, or that other lighters had child-proof safety features.

Furthermore, the lighter was not unreasonably dangerous to an extent beyond which the ordinary adult consumer is capable of contemplating. The parents of Joel Curtis were certainly aware of and sufficiently appreciated the danger that the lighter posed to an unsupervised child. The lighter was not appreciably more dangerous than that contemplated by Mr. and Mrs. Curtis who took steps to warn and protect their children from the dangers they understood to be inherent in the product. The accident that resulted in injuries to Joel Curtis was certainly tragic but the mere occurrence of the accident does not mean that the product must have been defective or unreasonably dangerous under the Act. A manufacturer is not an insurer of its product. It is not required that the design be perfect, or render the product accident proof or incapable of causing injury. The manufacturer is not required to incorporate the ultimate safety features in the product. Where it is simply shown that there is a better, safer, or different design which would have averted the injury, this does not establish that there has been a departure from the required standard of care. *Kerley v. Stanley Works*, 553 S.W.2d 80, 84 (Tenn.App.1977).

Plaintiffs have sought to avoid summary judgment by stating they are prepared to introduce evidence of the facility with which children under five years of age ignite lighters, and the severity and frequency of the injuries resulting from the defendants' failure to child-proof their product. Plaintiffs argue that such evidence is relevant under *Gann v. International Harvester Co. of Canada, Ltd.*, 712 S.W.2d 100 (Tenn.1986), to demonstrate the ordinary consumer's lack of appreciation for the dangers of lighters. Plaintiffs have submitted documents from lighter industry standards groups, government statistics and reports, as well as the affidavits from several "expert" witnesses. (Court File No. 80, p. 7). After carefully reviewing the record, however, the Court agrees with de-

fendants that the documents and expert affidavits proffered by plaintiffs would be inadmissible as evidence at trial and/or immaterial and, therefore, should not be taken into consideration by the Court for purposes of ruling on the motion for summary judgment. (Court File Nos. 92, 101).

### D. Testing

Finally, the plaintiffs' claim that defendants are liable under the Act for failure to adequately test and inspect their lighter must also be dismissed. The Court has already determined that the lighter was not defective or unreasonably dangerous in its design. No amount of testing or inspection would have "weeded out" a non-defective product. Any alleged lack of testing or inadequate inspection by defendants was not the proximate cause of the injuries suffered by Joel Curtis. *Mello v. K–Mart Corp.*, 792 F.2d 1228 (1st Cir.1986) (interpreting Tennessee law).

### E. Reckless Conduct

Plaintiffs allege that the actions of Universal Match and Feudor were reckless, wanton, and in flagrant disregard of their social obligations to consumers, and plaintiffs seek to recover punitive damages. It is well settled under Tennessee law that punitive damages may be awarded in cases involving gross negligence, or where a wrongful act is done so recklessly as to imply a disregard of social obligation, or where there is such willful misconduct as to raise a presumption of conscious indifference to the safety of others. *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1216 (6th Cir.1988); *Johnson v. Husky Industries, Inc.*, 536 F.2d 645 (6th Cir.1976).

Defendants are entitled to summary judgment dismissing the plaintiffs' demand for punitive damages based upon a claim of reckless conduct. The underlying legal claims of negligence, strict liability, and implied breach of warranty will be dismissed. Defendants have not committed a wrongful, reckless act upon which to base an award of punitive damages.

### F. Consumer Products Safety Act ("CPSA")

A private party can bring an action under the CPSA against a person who knowingly violates a consumer product safety rule, or any other rule or order issued by the Federal Consumer Product Safety Commission ("Commission"). 15 U.S.C. § 2072(a). The Commission since 1973 has been responsible for issuing rules under the Poison Prevention Packaging Act of 1970 ("PPPA"), 15 U.S.C. §§ 1471–1476 and § 2079(a).

Plaintiffs allege that the defendants' disposable butane cigarette lighter is a "consumer product" as defined in the CPSA, 15 U.S.C. § 2052(a)(1), and that the lighter fuel, butane or isobutane, falls within the definition of a "household substance" under the PPPA, 15 U.S.C. § 1471(2), the Federal Hazardous Substances Act, 15 U.S.C. § 1261(f)(1)(A)(v) and (vi), and 16 C.F.R. § 1700.1(b)(2)(i). Plaintiffs further aver that the plastic body of the Feudor lighter is itself the "package" for the butane fuel under 15 U.S.C. § 1471(3), and because of the degree or nature of the hazard posed to children the defendants' lighter fuel required "special packaging" pursuant to 15 U.S.C. § 1471(4) and 16 C.F.R. § 1700.14(a)(7) (1990). Plaintiffs claim they are entitled to recover damages because the defendants' lighter did not conform or comply with the special packaging requirements for butane and isobutane promulgated under 16 C.F.R. §§ 1700.15(a) and (b) (1990). (Court File Nos. 44 at pp. 14–16 and 80 at pp. 20–22).

Defendants respond that their lighter is not subject to the PPPA and the regulations promulgated thereunder. The PPPA was enacted by Congress for the purpose of curbing the accidental poisoning of small children as a result of their ingesting hazardous substances often found in containers that are not child-resistant. *See* H.Rep. No. 1642, 91st Cong. 1st Sess. 1, *reprinted in* 1970 U.S.Code Cong. & Admin.News at 5326. The term "package" is defined as "the immediate container or wrapping in which any household substance is contained for consumption, use, or stor-

age...." 15 U.S.C. § 1471(3). Defendants argue that the plastic body of the lighter is not a "container or wrapping" for butane within the definition of a package under section 1471(3). A consumer does not purchase a cigarette lighter for the purpose of dispensing butane from it. Rather, the lighter is an integrated product which ignites butane to produce a flame.

The Court agrees with defendants that the danger complained of in the present case is that the lighter can be used by a small child to start a fire. There is no complaint that the lighter is defective because a child can open the lighter or the alleged "package" and be injuriously exposed to butane. The plaintiffs' interpretation of the PPPA strains the statutes and the regulations too far beyond their proper limits, and finds support in neither the plain language of the PPPA nor its legislative history. The Court holds that the disposable cigarette lighter in question is not a "package" for butane and the PPPA does not apply. *Bondie v. BIC Corp.*, 739 F.Supp. 346, 353 (E.D.Mich.1990). Accordingly, summary judgment will be entered in favor of defendants dismissing the plaintiffs' claim brought pursuant to CPSA and PPPA.

An order will enter.