Price v. BIC                                    CV-94-607-B    11/22/96

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kathleen Price, et al.

  v.                                              Civil No.   94-607-B

BIC Corporation


ORDER OF CERTIFICATION

Seventeen-month-old Ryan Moore was severely injured on November 10, 1991, as a result of a fire started by Ryan's three-year-old brother, Douglas.  Ryan's guardian contends in this suit against BIC Corporation that: (1) Douglas started the fire by using a BIC disposable lighter; (2) the fire was caused by BIC's failure to incorporate a child-resistant feature into the lighter's design; (3) it was feasible to make the lighter child-resistant without significantly affecting the lighter's cost or effectiveness; and (4) Ryan's injuries were reasonably foreseeable.  Accordingly, Ryan's legal representative asserts a defective design product liability claim against BIC.  BIC argues that it is entitled to summary judgment on plaintiff's product liability claim because BIC's lighters are intended to be used solely by adults and the danger that children will misuse its lighters to start fires is open and obvious.

BIC's summary judgment motion is premised upon its belief that New Hampshire does not permit a plaintiff to maintain a defective design product liability claim if the plaintiff's injuries result from a risk of injury that was open and obvious to the product's intended users. Because I conclude that it is unclear whether the New Hampshire Supreme Court would limit defective design claims in the manner BIC suggests, I certify the following question to the New Hampshire Supreme Court:

> Can the legal representative of a minor child injured as a result of the misuse of a product by another minor child maintain a defective design product liability claim against the product's manufacturer if the product was intended to be used only by adults and the risk that children might misuse the product was open and obvious to the product's manufacturer and its intended users?

## FACTS[1]

On November 10, 1991, three-year-old Douglas Moore started a fire by using a BIC J-6 model disposable lighter that had been purchased by his mother Mary. Douglas's 17-month-old brother, Ryan, was severely burned in the fire.

_____

[1] I describe the facts in the light most favorable to the nonmoving party because this issue arises in the context of a motion for summary judgment. See Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1049 (1st Cir. 1993).

BIC sold its lighters in packages containing warnings stating: "Keep out of Reach of Children" and "Keep Away From Children." Thus, BIC was aware when it manufactured and distributed the lighters that they might be misused by children to start fires. Further, BIC failed to incorporate child-resistant features into the design of the J-6 lighter that would have prevented Ryan from being injured even though such features were feasible and available to BIC without significantly affecting the cost or effectiveness of the J-6 lighter.

Plaintiff has produced no evidence to counter BIC's claim that its lighters were intended to be used solely by adults. Nor has plaintiff produced any evidence to counter BIC's contention that the risk that minor children might misuse J-6 lighters to start fires was open and obvious to the lighter's intended users.

## DISCUSSION

In <u>Bellotte v. Zayre Corp.</u>, 116 N.H. 52 (1976), the New Hampshire Supreme Court considered the following certified question posed by the First Circuit Court of Appeals:

> Where a five-year old child who was playing
> with matches is seriously burned when his
> pajama top ignited; where the fabric was not
> treated with an effective fire-retardant
> material, but was 100% cotton of a type in
> general use at the time of the accident for
> the manufacture of such clothing; and where
> the question for the jury is whether such

3

> fabric is "unreasonably dangerous to the user or consumer" as provided by Restatement of Torts 2d § 402A(1), should the definition of "unreasonably dangerous" be framed in terms of the five-year old child who uses the pajamas or in terms of the child's parent who purchases them?

Id. at 53. The Supreme Court answered the question by stating that the "definition of 'unreasonably dangerous' should be framed in terms of the parent who purchases the pajamas for the five year-old child." Id. at 55. In reaching this conclusion, the court relied on comment I to section 402A(1) of the Restatement (Second) of Torts (1965) which provides that a product is "unreasonably dangerous" if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id. at 54.

The section of the Restatement cited by the court in Bellotte describes a "consumer expectations test" for determining whether a product is unreasonably dangerous. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 99, at 698 (5th ed. 1984). Several courts employing this test have found that a manufacturer has no duty to make a product child resistant if it is intended solely to be used by adults. See, e.g., Todd v. Societe BIC, S.A., 21 F.3d 1402, 1408 (7th Cir.) cert. denied, 115 S. Ct. 359 (1994); Floyd v. BIC Corp., 790 F. Supp. 276 (N.D.

4

Ga. 1992); <u>Sedlock v. BIC Corp.</u>, 741 F. Supp. 175, 177 (W.D. Mo. 1990); <u>Eads v. BIC Corp.</u>, 740 F. Supp. 1433, 1435 (W.D. Mo. 1989); <u>Curtis v. Universal Match Corp.</u>, 778 F. Supp. 1421, 1429-30 (E.D. Tenn. 1991) <u>aff'd</u> 966 F.2d 1451 (6th Cir. 1992); <u>but see</u> <u>Prosser and Keeton on Torts</u> § 99, at 698 (noting that many courts have substituted "foreseeable user" for "ordinary consumer" in consumer expectations test thereby expanding the tort to cover risks that would not have been contemplated by foreseeable users but would have been recognized by the ordinary purchaser-consumer).

Almost three years after deciding <u>Bellotte</u>, the New Hampshire Supreme Court issued its opinion in <u>Thibault v. Sears, Roebuck & Co.</u>, 118 N.H. 802 (1978). There, the court stated:

> In a strict liability case alleging defective design, the plaintiff must first prove the existence of a defective condition unreasonably dangerous to the user. In determining unreasonable danger, courts should consider factors such as social utility and desirability. The utility of the product must be evaluated from the point of view of the public as a whole, because a finding of liability for defective design could result in the removal of an entire product line from the market. Some products are so important that a manufacturer may avoid liability as a matter of law if he has given proper warnings. In weighing utility and desirability against danger, courts should also consider whether the risk of danger could have been reduced without significant impact on product effectiveness and manufacturing cost. . . .

5

> [W]hen an unreasonable danger could have been eliminated without excessive cost or loss of product efficiency, liability may attach even though the danger was obvious or there was adequate warning . . . .
>
> Inquiry into the dangerousness of a product requires a multifaceted balancing process involving evaluation of many conflicting factors. A court will rarely be able to say as a matter of law that a product has no social utility, or that the purpose or manner of its use that caused the injury was not foreseeable. The jury must decide whether the potentiality of harm is open and obvious. Reasonableness, foreseeability, utility, and similar factors are questions of fact for jury determination.

Id. at 807-09 (citations and internal quotations omitted) (emphasis added). Commentators have characterized the Thibault test as a risk/utility test. See, e.g., John F. Vargo, The Emperor's New Clothes: The American Law Institute Adorns a "New Cloth" for Section 402A Products Liability Design Defects - A Survey of the States Reveals a Different Weave, 26 U. Mem. L. Rev. 493, 777 (1996). In jurisdictions that use a risk/utility test, a manufacturer may be required to incorporate child-resistant features into its product if the risk that children will misuse the product is reasonably foreseeable and a child-resistant design is available and can be incorporated into the product's design without unreasonable cost or harm to the product's effectiveness. This duty may exist even if the product

6

is intended to be used solely by adults and the risks to children posed by their use of the product are open and obvious to adults. See, e.g., Griggs v. BIC Corp., 981 F.2d 1429,1438-39 (3d Cir. 1992) (BIC could be held liable under Pennsylvania law for negligent design using a risk/utility test because the duty of reasonableness extends to any foreseeable user); Bean v. BIC Corp., 597 So. 2d 1350, 1352 (Ala. 1992) (summary judgment improper on negligent design claim by child injured as a result of misuse of a BIC lighter) cert. denied, 116 S. Ct. 1045 (1996). Although the Thibault court did not expressly overrule Bellotte, no New Hampshire Supreme Court decision since Thibault has used a consumer expectations test in determining whether a product is unreasonably dangerous.

If Thibault's risk/utility test is unconstrained by a consumer expectations test,[2] the plaintiff will be entitled to a trial on her product liability claim. Alternatively, if plaintiff's claim is subject to the consumer expectations test employed in Bellotte, BIC will be entitled to summary judgment because the plaintiff has produced no evidence to counter BIC's

---

[2] Some courts use a risk/utility test for certain product liability claims but retain a consumer expectation test for claims involving what these courts consider a "simple but obviously dangerous product" such as a disposable lighter. Todd, 21 F.3d at 1412; Kirk v. Hanes Corp. of North Carolina, 16 F.3d 705, 709 (6th Cir. 1994).

claims that its lighters are intended to be used solely by adults and the risk that children might misuse the lighters is open and obvious. Since this case depends upon whether New Hampshire law will subject product liability claims to a consumer expectations test and since the viability of this test after <u>Thibault</u> remains in doubt, I certify the question to the New Hampshire Supreme Court.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

November 22, 1996

cc:   Thomas F. Kehr, Esq.
      C. Mark Furcolo, Esq.
      Paul R. Cox, Esq.