# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

DAVID NEAL and wife,  )
LORI NEAL,  )
            )
       Plaintiffs/Appellants,  )   Gibson Circuit No. H-2709
            )
VS.  )   Appeal No. 02A01-9612-CV-00305
            )
KEITH BOGGS, d/b/a BOGGS  )
LANDSCAPING BACKHOE & DOZER  )
SERVICE, WILLIAM O. "BILL" LILES,  )
d/b/a LILES BROS. & SONS, and  )
J. I. CASE, INC., a Tenneco Company,  )
            )
       Defendants/Appellees.  )

**FILED**

September 08, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF GIBSON COUNTY
AT HUMBOLDT, TENNESSEE
THE HONORABLE DICK JERMAN, JR., JUDGE

**LEWIS L. COBB**
**JONATHAN O. STEEN**
**SPRAGINS, BARNETT, COBB & BUTLER**
Jackson, Tennessee
Attorneys for Appellant

**JAMES T. RYAL, JR.**
**ADAMS, RYAL & FLIPPIN, ATTORNEYS-P.C.**
Humboldt, Tennessee
Attorney for Appellee, Keith Boggs, d/b/a Boggs
Landscaping Backhoe & Dozer Service

**CLINT V. BUTLER, JR.**
**DALE CONDER, JR.**
**RAINEY, KIZER, BUTLER, REVIERE & BELL, P.L.C.**
Jackson, Tennessee
Attorneys for Appellee, William O. "Bill" Liles, d/b/a Liles Bros. & Sons

**AFFIRMED**

                          **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HEWITT P. TOMLIN, JR., Sr. J.**

In this products liability action, Plaintiffs David and Lori Neal appeal the trial court's order entering summary judgment in favor of Defendants/Appellees Keith Boggs, d/b/a Boggs Landscaping, Backhoe & Dozer Service, and William O. "Bill" Liles, d/b/a Liles Bros. & Sons. For the reasons hereinafter stated, we affirm the trial court's judgment.

Plaintiff David Neal was seriously injured when a J.I. Case Model 1845C Uni-Loader fell on Neal's leg and broke his ankle. The Uni-Loader was manufactured by Defendant J.I. Case, Inc., which is not a party to this appeal. J.I. Case sold the Uni-Loader to Defendant/Appellee Liles, who later sold it to Defendant/Appellee Boggs. Boggs then leased the Uni-Loader to a contractor, for whom Neal was working on the day he was injured.

At the time of Neal's injury, Neal and his coworkers were filling a trench with dirt. One coworker, Gary Guest, operated the Uni-Loader, which he used to transport loads of dirt to the trench. The workers had constructed a dirt ramp leading into the trench. Guest made numerous trips in which he filled the Uni-Loader's bucket with dirt, drove the Uni-Loader down the dirt ramp into the trench, and dumped the bucket load of dirt. During this process, Neal and another coworker worked in the trench spreading the dirt which had been dumped by the Uni-Loader.

On one of Guest's trips, as Guest raised the Uni-Loader's bucket to dump another load of dirt, the Uni-Loader suddenly jerked forward and fell onto Neal's leg. At the time of the accident, the Uni-Loader was on level ground and appeared to carry the usual size load of dirt.

The Neals subsequently filed this products liability action against J.I. Case, Boggs, and Liles. In their complaint, the Neals alleged that the Uni-Loader was defective or unreasonably dangerous in that the Uni-Loader had a propensity to tip forward during normal operation. The complaint also alleged that the Defendants failed to adequately warn users of the Uni-Loader's propensity to tip forward.

2

All three Defendants moved for summary judgment and filed affidavits in support of their motions. J.I. Case, the Uni-Loader's manufacturer, submitted the affidavit of one of its product engineers, Gary D. Stromberg, who stated that the "1845C uni-loader was not defectively designed nor was it dangerous to an extent beyond that which would be [contemplated] by the ordinary user." Defendant Boggs, the lessor of the Uni-Loader, filed an affidavit in which he asserted that he had no prior knowledge that the Uni-Loader was unsafe or unreasonably dangerous during normal use. Defendant Liles, the seller of the Uni-Loader, filed an affidavit in which he made the following assertions:

> Individuals who ordinarily operate equipment such as the J.I. Case model 1845C uni-loader are aware that these machines have a potential for tipping over.
>
> It is commonly known among the ordinary users of the J.I. Case model 1845C uni-loader that these machines may tip over if the load in the bucket is too heavy, if the operator drives the machine forward down an incline rather than backing down an incline, etc.

In opposing the Defendants' motions, the Neals filed the affidavit of A.O. White, Jr., a registered professional engineer and an expert in investigating construction accidents. In his affidavit, White stated that the Uni-Loader "tipped forward while being unloaded in a normal manner" and that the Uni-Loader proved to be "unstable and unsafe in normal use, which indicated an unsafe design and/or manufacture." White further stated that:

> [N]o warning decals were found affixed to the J.I. Case Model 1845C Uniloader nor were any warnings found in the operator's manual which was furnished with the machine which would alert persons using the machine or persons within the vicinity of where the machine was being used to the machine's unsafe and unreasonably dangerous propensity to tip over under normal operating conditions.

In a previous deposition, however, Neal admitted to having knowledge of the Uni-Loader's propensity to tip over. Prior to his accident, Neal was told by coworkers, including Guest, that the Uni-Loader had "tipped over on somebody before out there at work before [Neal] started working out there." Neal was not certain if the Uni-Loader involved in the earlier accident was the same machine, but the Uni-Loader in question was the only machine he had observed on the job site. In any event, Neal acknowledged that he had

3

a general awareness of the propensity of the Uni-Loader and similar machines to tip over.

In its subsequent order, the trial court granted Boggs' and Liles' motions for summary judgment but denied the motion of J.I. Case. Pursuant to rule 54.02 of the Tennessee Rules of Civil Procedure, the trial court declared the order to be a final judgment as to Boggs and Liles, and this appeal followed.

In order to prevail in a products liability action, a plaintiff must prove that the product causing his injury was either defective or unreasonably dangerous as those concepts are defined in the Tennessee Products Liability Act. Whaley v. Rheem Mfg. Co., 900 S.W.2d 296, 299 (Tenn. App. 1995). The Act defines "defective condition" as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." T.C.A. § 29-28-102(2) (1980). The Act defines "unreasonably dangerous" to mean "that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." T.C.A. § 29-28-102(8) (1980).

Courts applying the Act have recognized that the foregoing definitions codify the "consumer expectation test" as the basis for assessing products liability in Tennessee. Ray ex rel. Holman v. BIC Corp., 925 S.W.2d 527, 529 (Tenn. 1996); Whaley v. Rheem Mfg., 900 S.W.2d at 299. The consumer expectation test generally may be defined as "whether the product's condition poses a danger beyond that expected by an ordinary consumer with reasonable knowledge." Ray ex rel. Holman v. BIC, 925 S.W.2d at 529. The test focuses on "what is anticipated or contemplated by the ordinary consumer." Higgs v. General Motors Corp., 655 F. Supp. 22, 26 (E.D. Tenn. 1985), aff'd, 815 F.2d 80 (6th Cir. 1987). A product is not defective and unreasonably dangerous "unless the product is dangerous beyond a plaintiff's contemplation as a user possessing ordinary knowledge of the product's characteristics." Kellar v. Inductotherm Corp., 498 F. Supp. 172, 176 (E.D. Tenn. 1978) (citing Orfield v. International Harvester Co., 535 F.2d 959, 964 (6th Cir. 1976)), aff'd, 633 F.2d 216 (6th Cir. 1980); see also Wyatt v. Winnebago Indus.,

4

566 S.W.2d 276, 280 (Tenn. App. 1977) (noting that product's dangerous condition must be one not contemplated by ultimate user). Stated another way, a product is not defective or unreasonably dangerous if it performs in the manner expected and if the ordinary consumer is capable of contemplating the danger of the product's characteristics. Curtis v. Universal Match Corp., 778 F. Supp. 1421, 1428 (E.D. Tenn. 1991), aff'd, 966 F.2d 1451 (6th Cir. 1992).

Under the consumer expectation test, "the issue of whether the particular danger posed by a product is beyond the expectation of an ordinary consumer is normally to be determined by a jury." Curtis v. Universal Match, 778 F. Supp. at 1427; see also Young v. Reliance Elec. Co., 584 S.W.2d 663, 668 (Tenn. App. 1979) (noting that whether product is in defective condition or unreasonably dangerous to user ordinarily is question for trier of fact). Summary judgment is proper, however, if the undisputed evidence demonstrates that "the danger is obvious to the ordinary consumer." Curtis v. Universal Match, 778 F. Supp. at 1427. Thus, a defendant may be entitled to summary judgment if he can demonstrate that the dangers of the product in question are such common knowledge that objectively the product cannot be considered unreasonably dangerous. Id. Conversely, when confronted with a properly supported motion for summary judgment, the plaintiff may be required to present evidence demonstrating the ordinary consumer's lack of appreciation for the dangers of the product. Id. at 1430; see, e.g., Gann v. International Harvester Co., 712 S.W.2d 100, 105 (Tenn. 1986) (wherein plaintiff presented evidence that ordinary consumer lacked knowledge that tractor had propensity to roll over on relatively flat ground).

Applying the foregoing standard, we conclude that the trial court properly granted Boggs' and Liles' motions for summary judgment in this case. In moving for summary judgment, the Defendants presented evidence that the Uni-Loader was not "dangerous to an extent beyond that which would be [contemplated] by the ordinary user." The undisputed evidence demonstrated that individuals "who ordinarily operate equipment such as the J.I. Case model 1845C uni-loader are aware that these machines have a potential

5

for tipping over." Rather than contradicting this evidence, Neal's own testimony reveals that he was aware of the Uni-Loader's propensity to tip over.

This case is analogous to Orfield v. International Harvester Co., 535 F.2d 959 (6th Cir. 1976), in which the plaintiff sued for injuries he received in a bulldozer accident. The plaintiff, who was using the bulldozer to windrow trees and brush, was struck in the chest by a fifty-foot-long black oak tree. Id. at 959-60. The plaintiff sued both the manufacturer and the seller of the bulldozer, contending that the bulldozer was defective or unreasonably dangerous in that it was not equipped with an overhead protective canopy. Id. at 960. The plaintiff's testimony at trial, however, revealed that the plaintiff was aware of the danger of windrowing trees and brush with a bulldozer that had no canopy guard. Id. Based on this testimony, the trial court granted the defendants' motion for directed verdict at the close of the plaintiff's case. The appellate court affirmed, despite testimony by the plaintiff's safety engineer that, in his opinion, the bulldozer was defective and unreasonably dangerous. The court reasoned that

> [T]he plaintiff's own testimony demonstrates that while the bulldozer was dangerous to operate without a canopy guard, it was not dangerous to an extent beyond his knowledge as an ordinary consumer. From the undisputed evidence, the plaintiff had full knowledge of the machine's characteristics as manufactured and delivered; he was fully aware of the dangers which would be incurred in conducting the windrowing operations without the canopy guard; and he was also aware that while the machine as manufactured and delivered may have been dangerous, it was not dangerous beyond his own contemplation as a user possessing ordinary knowledge of its characteristics.

Id. at 964 (footnote omitted).

On the other hand, we find the present case to be distinguishable from Gann v. International Harvester Co., 712 S.W.2d 100 (Tenn. 1986), in which the plaintiff sued a manufacturer for injuries he sustained when a tractor rolled over while on relatively flat ground. Gann was similar to the present case in that the determinative issue was the user's knowledge of the tractor's propensity to turn over while in operation. The trial court directed a verdict in favor of the manufacturer based on evidence that the danger of serious injury from roll-overs and the danger of roll-overs on steep slopes were known by

6

the ordinary user and by the plaintiff. Id. at 105. The court of appeals affirmed, but the supreme court reversed based on evidence presented by the plaintiff which contradicted the defendant's proof concerning the ordinary user's knowledge of the dangers of the product. Specifically, the plaintiff presented proof that the ordinary consumer lacked knowledge that roll-overs occurred on relatively flat ground and not just on steep slopes. Id. In reversing the judgments of the trial court and the court of appeals, the supreme court concluded that this conflict in the evidence created an issue for the jury's resolution.

In the present case, the evidence showed that Neal had a general awareness of the Uni-Loader's propensity to tip over. Unlike the plaintiff in Gann, however, the Neals presented no evidence that the ordinary user's or Neal's knowledge of such propensity was limited to certain situations. In arguing that summary judgment was improvidently granted, the Neals focus on the additional statement made in Defendant Liles' affidavit to the effect that ordinary users of the Uni-Loader commonly know that the machine may tip over under certain operating conditions, such as "if the load in the bucket is too heavy, if the operator drives the machine forward down an incline rather than backing down an incline, etc." The Plaintiffs point out that neither of these operating conditions was present in this case. We note, however, that the operating conditions mentioned by Liles did not purport to be an exclusive list of the situations under which the Uni-Loader may tip over, as evidenced by Liles' use of the term "etc." at the end of the list. Moreover, Neal's own testimony concerning his knowledge of the Uni-Loader's propensity to tip over did not limit such knowledge to certain operating conditions.

In our view, the important consideration in this case is the undisputed evidence demonstrating that ordinary users of the product, including Neal, have a general awareness and appreciation of the Uni-Loader's propensity to tip over while in operation. As explained by one court in applying the Act,

> There is no requirement . . . that before a manufacturer is insulated from liability, a plaintiff must contemplate the precise events which ultimately lead to the harm. It is sufficient that a plaintiff appreciate the kind of accident which can occur from the use of the product in its allegedly defective condition. Nor

7

> is it necessary that the danger be fully contemplated at every moment.

Kellar v. Inductotherm, 498 F. Supp. at 176 (citing Orfield v. International Harvester, 535 F.2d at 965-66)). The plaintiff need have only a "general appreciation" of the product's danger. Id.

Further, in affirming the trial court's judgment, we are mindful that

> A manufacturer is not an insurer of its product. It is not required that the design be perfect, or render the product accident proof or incapable of causing injury.

Curtis v. Universal Match, 778 F. Supp. at 1430; see also Ellithorpe v. Ford Motor Co., 503 S.W.2d 516, 519 (Tenn. 1973) (noting that manufacturer is not required to build accident-proof products).

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to the Plaintiffs, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
TOMLIN, Sr. J.

8